[No. 18491.   *En Banc.*   February 16, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Alvin Coyle et al., Plaintiff*, v. THE SUPERIOR COURT FOR WALLA WALLA COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN (14, 39)—STATE HIGHWAYS—SELECTION OF ROUTE — NECESSITY FOR APPROPRIATION — EVIDENCE — SUFFICIENCY. Where conflicting testimony as to the necessity for a condemnation for a state highway shows, at most, a difference between experts as to which route is most practical and satisfactory, a selection made in good faith by the supervisors is conclusive, under Rem. Comp. Stat., § 6766, so providing in the absence of bad faith, or arbitrary, capricious or fraudulent action.

SAME (14, 39, 40)—SELECTION OF ROUTE—RELOCATION OF ROAD— POWERS OF HIGHWAY BOARD—STATUTES. The fact that the old route for a state highway was duly selected in 1913 and temporarily improved does not preclude the state officials from changing the same and selecting a new route pursuant to Rem. Comp. Stat., § 6829, which provides that, where the general route of any state highway shall be designated by the legislature without specifying the particular route to be followed, the state highway board shall be at liberty to adopt in whole or part any existing state highway or to deviate therefrom.

Certiorari to review an order of the superior court for Walla Walla county, Mills, J., entered January 15, 1924, adjudging a public use and necessity in condemnation proceedings, after a hearing before the court. Affirmed.

*C. M. Rader, J. F. Watson, E. L. Casey,* and *John C. Hurspool,* for plaintiff.

*The Attorney General* and *T. W. Holman, Assistant,* for respondents.

MACKINTOSH, J.—Certiorari to review an order of necessity made by the superior court of Walla Walla county in an action begun by the state to condemn a

[1]Reported in 223 Pac. 3.

right of way for a highway into Walla Walla from the west, to become a part of the Inland Empire highway.

The state is seeking to condemn property for the purpose of changing the route of the Inland Empire highway from the limits of the city of Walla Walla to a point west of Mill creek, on the present existing highway from Wallula to Walla Walla. The new route is some four miles in extent and lies considerably to the north of the present route. It is the state's contention, and evidence was introduced to support it, that by a selection of the new route the necessity of a bridge across Mill creek was obviated, and it was shown that the present bridge across Mill creek was not able to stand the test strains called for by the state's highway specifications for a bridge subjected to the amount of travel which this one must carry; that the bridge had been overstrained and that the ring of the arch showed cracks; that the new route would allow proper drainage for the highway, whereas under the present route through the Mill creek basin there was not proper drainage; that water came up under the highway, and that the water table was too close to the surface for the proper maintenance of a permanent highway; that, by the new route, a reverse curve crossing over the Oregon & Washington Railway Company's tracks was eliminated; that a right-angled grade crossing over the interurban tracks at Offner station was also avoided; that the new route followed the base of a ridge of hills and furnished a better foundation for a permanent highway; that the new route was some six hundred feet less in length to the city limits than the old route and of better alignment, and that the new route had been approved by the Federal government and accepted as a Federal aid project.

The relators, who are property owners living along the old route, contended, and introduced evidence to

support the contention, that the old route had been used since 1913, when the then state highway engineer had selected it; that it had thereafter been improved for the whole distance by macadamizing; that there were only slight curves on it; that the drainage had always been satisfactory; that the bridge at Mill creek was in good condition; that the grade crossings were not dangerous; that a large population had established residences along the route; that the present route enters the city of Walla Walla more directly than the new route and under very much safer conditions; that the new route passes close to hills which are subject to washing and across land on which it is difficult to make a good roadbed; that, although the new route is shorter outside the city, after coming to the city limits, travel would have to pass over streets not yet paved and for a greater distance in order to reach the center of the city, and that the new route would cost considerably more than would the permanent improvement of the old route.

The first question under such a record is a question of fact, and that is, whether the action of the state highway board can be said to show "bad faith, arbitrary, capricious or fraudulent action."

Under ch. 32, Laws of 1921, p. 116 (§ 6766, Rem. Comp. Stat.) [P. C. § 6786], it is provided "that in such action the selection of the lands by the supervisor of highways shall, in the absence of bad faith, arbitrary, capricious or fraudulent action, be conclusive upon the court and the judge before whom the action is brought that said lands are necessary for the purposes sought." Viewing the testimony in the light most favorable to the relators, it shows only that there is a difference between experts as to which route is the most practical and satisfactory. The testimony clearly

shows that full consideration was given by the public officials charged with that duty of the entire situation as it related to both routes, and that they were possessed of all practical and expert information regarding the matter, and, after a thorough study, the new route was decided upon as being the proper one on which to construct and improve a permanent highway. Under such conditions the court is forbidden by the statute to hold that the lands selected for the new route are not "necessary for the purpose sought." The situation here is very different from that disclosed in the recent opinion in *State v. Superior Court, ante* p. 79, 222 Pac. 208.

The next and only question for consideration is whether the state highway board had the power to select the new route.

It is argued by the relators that the old route having been selected in 1913 and improved, although not permanently, there is no more authority to select another route. Citations are made to decisions of courts in different states holding to the effect that once the public officials have made a selection and expended public funds they cannot thereafter alter it. But an examination of those authorities will show that they were decided under statutes which compel such decisions, whereas in this state the legislation in regard to state highways is, as we will presently see, very different in its effect.

This case must be decided under the legislation which has been enacted looking to the establishment of permanent state highways. It will be conceded that the establishing of state highways is a matter which rests with the legislature, and after the legislature has definitely located a state highway, it is not within the power of the state highway board to depart from that location.

An examination of the statutes as they relate to the Inland Empire highway discloses the following: that the legislature, in ch. 65, § 2-c, Laws of 1913, p. 221, established;

"A highway connecting with the Sunset Highway at or in the vicinity of the city of Ellensburg; thence by way of North Yakima, Kennewick, Pasco, Walla Walla, Dayton, crossing the Snake River at either Almota or Penawawa, Colfax, Rosalia, Spokane, Deer Park, Loon Lake, Colville, to the international line at boundary, which shall be known as the Inland Empire Highway." [Rem. Comp. Stat., § 6791.]

It was under this act that in 1913 the old route was laid out.

Thereafter, in 1915, the legislature, by ch. 164, § 3, Laws of 1915, p. 485, established;

"A highway connecting with the Sunset Highway at or in the vicinity of the city of Ellensburg; thence by the way of North Yakima, Kennewick, Pasco, Walla Walla, Dayton, crossing the Snake river in the vicinity of Central Ferry, Colfax, Rosalia, Spokane, Deer Park, Loon Lake, Colville, to the international boundary line at Laurier, which shall be known as the Inland Empire Highway." [Rem. Comp. Stat., § 6795.]

Section 22 of the same act provided:

"Nothing herein shall be construed to change or vacate any state road or extension of any road established by any act or statute. . . ." Laws of 1915, p. 491, § 22 [Rem. Comp. Stat., § 6815].

In 1923, the legislature, by ch. 185, § 3, Laws of 1923, p. 628, established;

"A primary state highway, to be known as State Road No. 3, or the Inland Empire Highway, . . . Beginning at the international boundary line at Laurier in Ferry County; thence by the most feasible route in a southerly direction through Colville, Spokane, Colfax, Dayton to Walla Walla; thence in a northwesterly direction through the cities of Wallula, Pasco, Sunny-

side, Yakima, Ellensburg to a junction with the Sunset
Highway at or near Virden in Kittitas County; . . .''
[Rem. 1923 Sup., § 6791-3.]

This chapter expressly repealed § 3 of ch. 164, Laws
of 1915, p. 485 [Rem. Comp. Stat., § 6795], and con-
tained no saving clause such as that contained in the
act of 1915. It was under this last act that the new
route was selected. There is nothing in these three
acts which definitely lays out any specific route other
than to say that the Inland Empire Highway shall ex-
tend between certain named cities. The route between
those cities was not established; that was a matter left
to the state highway board.

In § 1, ch. 35, Laws of 1921, p. 118 [§ 6829, Rem.
Comp. Stat.], we find:

''Whenever the general route of any state highway
shall be designated and laid out by the legislature as
running to, through or between certain designated
points, without specifying the particular route to be
followed to, through or between such points, the state
highway board shall determine the particular route to
be followed by said highway to, through or between
said designated points, and shall be at liberty to select
and adopt as a part of such highway, the whole or any
part of any existing state or county road, or to deviate
in whole or in part from any existing state or county
road. The state highway board need not select and
adopt the entire route for such highways at one time,
but may select and adopt parts of such routes from
time to time as it deems advisable.''

Under this section, it would seem to be clear that
the state highway board, after the passage of the act
of 1923, had the right to re-establish the Inland Empire
highway and to use therefor any route which was then
part of an existing state or county road. The act of
1923 does not attempt to specify the particular route,
and under the laws of 1921, a deviation ''in whole or in

part" is permitted in the determination of the particular route to be followed.

It was clearly the legislative intent to allow the state highway board to exercise its judgment, when free from bad faith, arbitrary, capricious or fraudulent action in the selection of the particular route, so long as the highway passed through the points named by the legislature in their establishment of the Inland Empire highway. That this was the intent of the legislature is manifested by an examination of chapters 63 to 67 of the Laws of 1923, pp. 192, 204, where authority is given for the deeding of abandoned portions of the state highway. An examination of those chapters shows that some fifteen or more specified descriptions of abandoned portions of state highways were directed to be conveyed to various parties. As further evidence of the legislative intent, ch. 108, Laws of 1923, p. 291 [Rem. 1923 Sup., 6829-1], covers generally the subject of abandoning state highways, § 1 of that chapter reading:

"Whenever any state highway is relocated across any lands and by reason thereof the existing highway across said lands will be useless to the state and will be abandoned, the state highway engineer may, if the owner of the lands embraced within the relocated highway is also the owner of the abutting lands on both sides of the abandoned and useless highway right of way, agree with such owner, as the consideration, or as a part of the consideration for the conveyance to the state of the lands required for the relocated highway right of way, to cause to be made to such owner a deed of conveyance of the abandoned and useless right of way."

This attitude of the legislature in regard to the subject is in consonance with the demands of the situation, of which the courts will take judicial notice. It is ap-

parent that mistakes in original locations have been
made, for some original locations have not been satis-
factory and changes in population might make a change
in the route necessary or advantageous, and it is im-
possible in the nature of things for a perfect selection
to always be made originally, and the proper way to
handle the matter was to allow a certain amount of
discretion to the state highway board in the details of
location. Until the legislature manifests a different
intent, or has said more than that the highway shall
extend between certain designated points and has es-
tablished a specific route between such points, the
court will not interfere with the re-selection of the state
highway, where the board's action is free from bad
faith, arbitrary, capricious or fraudulent action. For
the reasons stated, the order of necessity will be af-
firmed.

MAIN, C. J., HOLCOMB, MITCHELL, BRIDGES, FULLER-
TON, and TOLMAN, JJ., concur.