BOYKIN *ET AL.* v. STATE HIGHWAY DEPARTMENT
OF SOUTH CAROLINA˙

(144 S. E., 227)

1. HIGHWAYS—STATE HIGHWAY DEPARTMENT HAD NO POWER TO LOCATE STATE HIGHWAY WITHOUT REASONABLE REFERENCE TO PRESENT ROADS AS CONTROLLING FACTOR IN DETERMINING ROUTE (ACT MARCH 21, 1924 [33 ST. AT LARGE, 1193]).—State Highway Department, under Act March 21, 1924 (33 St. at Large, 1193), providing for a State system of highways, had no power to locate road between control points without reasonable reference to location of present road, as one of controlling factors in determining route to be followed.

2. CONSTITUTIONAL LAW—"STATE HIGHWAY DEPARTMENT" IS ADMINISTRATIVE BODY, WITH CERTAIN FIXED DUTIES, WITHOUT AUTHORITY TO SET AT NAUGHT EXPLICIT INSTRUCTIONS OF LEGISLATURE.—"State Highway Department" is administrative body, created by the Legislature, with certain fixed duties to perform, and has no authority to set at naught the explicit instructions of the Legislature.

In the original jurisdiction.   December, 1927.   Injunction granted.

Original action by B. H. Boykin, Jr., and others, suing on behalf of themselves and other citizens, property owners,

and taxpayers, against the State Highway Department of South Carolina, wherein the County of Kershaw intervened.

The plat made by the State Highway Department, showing the location of the present road and of the proposed new road, on a much reduced scale, is here inserted by request of the Court, as follows (see p. 485):

*Messrs. Douglas McKay* and *J. A. Manning,* for petitioners, cite: *Powers of State Highway Commission:* 33 Stat., 1193; 132 S. E., 680, 682. *As to powers of relocation:* Sec. 3054, Code; Id., 2907; 28 Stats., 1209. *"Relocation":* 92 S. E., 781; Elliott on Roads, Sec. 454; 7 Mass., 158; 37 Cyc., 158; 47 Atl., 587; 25 Pac., 291; 4 N. E., 581.

*Attorney General John M. Daniel,* and *Assistant Attorney Generals Cordie Page* and *J. Ivey Humphrey,* and *Mr. Laurens T. Mills,* for defendants, cite: *Before creation of State Highway Commission power to locate and relocate roads was in County Board of Commissioners:* Sec. 2907, Code; 86 S. C., 407. *Power now in State Highway Commission:* Sec. 3054, Code; 35 Stats., 278; 134 S. C., 402. *"On":* 52 Iowa, 303; 143 Iowa, 297.

July 27, 1928.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action in the original jurisdiction of the Court for a permanent injunction, to restrain the State Highway Department from constructing and hard-surfacing a section of road, about 5.4 miles in length, proposed by the department as a substitute for a part of the road on Route No. 26, between the Town of Rembert and the City of Camden, which the petitioners allege, the highway department is without authority of law to do.

In 1924 the Legislature passed an Act (33 Stat., 1193), known as the "Pay-As-You-Go" Act, the title of which is as follows:

STATE ROUTE Nº 26 – KERSHAW COUNTY

CAMDEN–SUMTER ROAD

SHOWING ROUTE BY BOYKIN'S MILL AND
ROUTE ALONG NORTH WESTERN R.R.

"An Act to provide for a state system of hard-surfaced, topsoil and other dependable types of highways in this State, to define and describe said roads, and to provide funds for construction, for maintenance and for reimbursements to counties in certain cases."

. As showing the purpose of the Legislature, in the first part of Section 1 of the Act the following language is used:

"There is hereby created and established a state-wide connected system of hard-surface, topsoil, and other dependable types of public roads, which shall be constructed by the State of South Carolina, and ever after maintained as state highways. Such state highways shall be known as the state highway system, and shall consist of highways on the following described routes, which said routes shall be taken over and maintained by the highway department immediately after the approval of this Act by the Governor."

Then follow, in this section, the names of the counties of the State in alphabetical order, and under the name of each a description of the kinds of roads to be constructed and maintained in such county, with routes designated, etc. Section 2 of the Act, in part, reads as follows:

"That the State Highway Department is hereby authorized and directed to build and construct the roads above described and any and all necessary bridges along the same routes from the funds herein provided, it being understood that these sections of roads do not constitute the entire mileage on the state routes herein mentioned, but are, for the purpose of this Act, to be considered as a state highway system. The complete state highway system will be understood to mean the system of highways in effect at the present time, with whatever changes are made necessary by the contents of this bill, together with such other roads as may be added from time to time with the approval of the Highway Commission."

Among the routes directed by the Act to be taken over by the highway department for construction and maintenance in Kershaw County is the route, "from Camden south-easterly by way of Route No. 26 to the Sumter County line," and in Sumter County, "from Kershaw County line north of Rembert on Route No. 26 southward to Myers' store. * * * "

The petitioners, after setting out some of the facts above indicated, allege that Highway No. 26, designated by the Act to be built and hard-surfaced between the City of Camden and the Town of Rembert, a distance of about 13 miles, is officially marked and recognized and has been accepted by the State Highway Department as such; that the State Highway Department is determined to abandon a part of Route No. 26, in disregard of the law requiring it to hard-surface and maintain same, and has "planned a new highway, leaving the established highway about one-fifth mile south of the Sumter County line, and running alto-gether over another line of roadway all the distance from said point to a point near Mulberry Plantation, about four miles south of Camden"; that the proposed substituted high-way does not touch Route No. 26 at any place between the points designated, but runs nearly all the way at a distance from one to two miles from it, and is planned to cross streams and other places, necessitating costly construction; that the proposed substituted highway passes through an entirely new and undeveloped territory, while Route 26, designated by the Act to be built, goes through a fertile and well-settled community; that the State Highway Depart-ment claims the power to "relocate" Highway No. 26 be-tween the points named, but that the power sought to be exercised by it is not one of relocation, but is one of aban-donment between the points named, and the substitution of an entirely new highway.

By its return to the rule to show cause the Highway Department admits that the State Highway Commission has determined to relocate a part of Highway No. 26 between the Town of Rembert and the City of Camden, and that after such relocation it would be designated as Route No. 26, and alleges that that part of the old Route No. 26, proposed to be relocated, passes through an exceedingly rough country, and has many sharp and dangerous curves that cannot be eliminated without great expense, while the route proposed by the Highway Department to be substituted therefore will be a shorter one, and can be constructed at less expense.

The County of Kershaw was allowed to intervene, and has filed a return to the rule to show cause, contending that the State Highway Department, in the exercise of its discretion, has the authority to build the highway proposed by it as a substitution for a part of Route No. 26 designated in the "Pay-As-You-Go" Act.

The petitioners contend that the proposed abandonment of Highway No. 26 between the points named, and the substitution therefore of another route by the State Highway Commission, would destroy the identity of the route designated by the Legislature, and is wholly beyond the power and authority of the Commission.

Counsel for the Highway Department, after citing definitions of the words "road" and "route," make the following contentions: (1) That the General Assembly in the Act itself made a distinction in the meaning of the two words, in that it directed a connected system of public roads to be constructed, while it stated that the system should consist of the routes named in the Act, which indicated that the roads to be constructed were to follow the course or direction of the routes named; (2) that the road to be constructed is a definite way, while the route gives the general direction or course; that this clearly indicates that the high-

way department is vested with discretion, limited between the control points named, in the construction of such roads, having no authority, however, to leave out any one of the control points; and that if the Legislature had meant that the old roadbed should be followed, without any discretion on the part of the department, it would not have used the word "constructed," but rather would have directed that such road be "improved and hard-surfaced."

The Legislature, by the Act of 1924, undertook to provide for a state system of certain types of highways in the State, to define and describe such roads, and to provide funds for their construction, maintenance, etc., and it was declared in the Act that such a system of highways was created thereby, to be constructed by the State of South Carolina, and to be maintained by the State Highway Department, and that the State Highway Department, which had theretofore been created by an Act of the Legislature, was authorized and directed to build and construct the roads described in the Act along or on the routes specified and named therein. Counsel for the defendant lays great stress upon the meaning of the word "road" and of the word "route," as being indicative of the intent of the Legislature to vest the State Highway Department with the discretion claimed.

"Route" is from a Latin word meaning to break, and literally conveys the idea of a broken or beaten path or way. One of its meanings, given by Webster, pertinent here, is "the course or way which is or is to be traveled or passed; a course; road; path." Funk & Wagnalls: "A course, road, or way taken in passing from one point to another by any person or moving object." One of the meanings given by Webster for the word "road" is "a place where one may ride; an open way or public passage for vehicles, persons and animals; a track for travel, forming a means of communication between one place and another." Funk & Wagnalls define road to be "an open way for public passage,

especially from one city, town, or village to another."
Some of the synonyms given are "beaten path, course, high-
way, passage, route and track."

We do not think, however, that the contention of the de-
fendant can be established, or the question here in dispute
concluded, by definitions of these words. Conceding that
each of them has the particular meaning attributed to it by
the defendant, we cannot ignore their other meanings;
their significance when used in any particular connection
must be sought from the entire context. In the light of all
this, we must look in addition, in the present case, to the
entire language of the Act of 1924, and prior and subse-
quent acts affecting the situation, as well as to the purpose
of the Legislature in creating a permanent state highway
system.

The defendant contends that the State Highway Depart-
ment, in taking over, under the 1924 Act, certain highways
then in existence, and in constructing and maintaining the
roads named in the Act as constituting, for the purpose
thereof, a state highway system, is vested with the same
powers exercised by the county road authorities under the
law, in the laying out and building of roads, etc. We do
not think that the contention is good. Section 2907, Vol.
3, Code, 1922, defines the powers of the County Board of
Commissioners of the several counties in opening new pub-
lic roads and changing the location of old public roads,
where, in their judgment, such change would be for the
public good, with powers of condemnation, etc. Section
3054, Vol. 3, Code, 1922, provided that the State Highway
Commission shall, under the advice of the state highway
engineers, lay out a system of connecting highways through-
out the State, connecting every county seat within the State,
and covering such main avenues of travel and traffic as the
State Highway Commission might deem advisable, but,
under the provisions of the Act, such roads could not be

built, except with the consent and co-operation of the local road authorities. It further provided that the funds belonging to each county should be used, by and with the consent of the local authorities, for the building of such roads in the County, etc.

Under the law in force at the time of the passage of the Pay-As-You-Go Act in 1924, the State Highway Commission, with the consent and co-operation of the local road authorities of the several counties, had created a more or less loosely connected system of highways. By the Act of 1924 these highways were incorporated, along with other highways authorized to be constructed and maintained, into a closely knit state highway system created by the Act, and the State Highway Department was charged with the maintenance and construction of these roads. However, there is no intimation in the Act that the Legislature clothed, or intended to clothe, the State Highway Commission with the full powers and discretion vested in the County Boards of Commissioners. In fact, it appears that it was the intention of the Legislature to vest the Commission with only such powers as were specifically conferred by the Act, including, of course, such implied powers as might be necessary for the performance of the duties laid upon it. To illustrate: Among the powers possessed by the County Board of Commissioners was that to condemn right of way for the purpose of road construction. The Legislature, realizing that the power of condemnation would be necessary to the Commission for the construction of the state highways, and recognizing that no such power would vest in it except by specific provision, created such power by Section 10a of the Act:

"That the State Highway Department for the purpose of acquiring rights of way, material for the construction of highways, sand, rock, clay and other material necessary, shall have the right to condemn land and such power is herewith conferred upon it under the provisions of law now con-

ferred upon the Board of County Commissioners, or other county authorities of the various counties of the State; and in any condemnation proceedings instituted by the said State Highway Department benefits to be derived by reason of the proposed road construction shall be taken into consideration in determining the amount of compensation, if any, to be awarded to the party or parties whose property is being condemned."

From no angle can it be successfully contended that, either expressly or by implication, the Act of 1924 clothed the State Highway Commission with the full powers vested in the Board of County Commissioners, in the laying out and building of public roads, etc. If the Legislature had intended to confer such powers upon the Commission, it would have done so by specific provision, as in the case of condemnation.

Nor do we think that the language of the Act designating the routes to be followed warrants the conclusion, arrived at by the defendant, that the location of a road between the control points named is left entirely to the discretion of the Commission. There is nothing in the Act to indicate that the Commission is vested with such far-reaching discretion. If it had such discretion, the Commission, in constructing the highways, could shift any route in the system many miles away from the roadbed existing at the time of the passage of the Act of 1924, or Acts amendatory thereto, so long as the control points were not left out. We think that, on the contrary, the words of the Act itself, providing for the kinds of roads to be constructed, the routes to be followed, the inclusion of the then existing system of highways in the State System, and the taking over and maintenance of the designated routes "immediately after the approval of this Act by the Governor," clearly indicate that the Legislature intended the Commission, in constructing the highways on the desig-

nated routes, to maintain the identity of the then existing roads.

The passage of the 1924 Act grew out of the desire of the legislative representatives of the various counties to create, in keeping with progress in other states, a state highway system of roads, connecting the various county seats and principal towns of the State, and connecting with the principal roads at the boundary lines of adjoining states. We must assume—and there is nothing in the Act to support any other assumption—that representatives of the various counties, while the bill was being considered, gave it the closest attention, and incorporated in it such routes to be followed in the construction and maintenance of the highways to be incorporated in the highway system, as they intended to be followed, and as their judgment dictated to be for the best interest of their respective counties, the State, and the traveling public at large; and it is untenable, under these circumstances, to say that the instructions given as to routes to be followed were only tentative or suggestive, and that the Legislature intended to vest the Highway Commission with the power and authority to follow routes of their own choosing instead of the routes designated.

The State Highway Department is an administrative body, created by the Legislature, with certain fixed duties to perform, and has no authority to set at naught the explicit instructions of the Legislature. In *Gaston v. State Highway Department,* 134 S. C., 402; 132 S. E., 680, this Court, in considering the 1924 Act, said:

"Where the language of the Act under consideration is clear and certain as to the routes to be followed, etc., the State Highway Department is bound to conform to the terms of the statute, which, in such cases, neither the Highway Department nor the Courts themselves have any authority to vary."

And again:

"The Legislature has the right, in providing for a system of state highways, to say just where the roads shall be built, just what kind of roads shall be constructed, how they shall be built, etc., and when such provisions in the statute are clear and certain the Highway Department is bound to obey the mandate of the law."

If a change in routes is wise and desirable, the Legislature may itself make such change, or it may give to the State Highway Commission the power to do so.

The defendant further contends that "the phrase 'on Route No. 26' was intended by the Legislature to mean such course as the Highway Department might select along the general direction of Highway No. 26," and was not intended to mean that "the new road must follow the exact beaten path of the old," and that "the word 'on,' when used in reference to a place, means near, at, adjacent to," and is of sufficient elasticity to permit the construction placed on it by the Highway Department in relocating this road.

We think that the word "on," as used in this connection, should be given its ordinary, common-sense meaning, and not a strained one. The present roadbed, as we have indicated, is a controlling factor in determining the route to be followed in the construction of the highway directed to be built; and while the department is not required to follow with exactness the identical tracks of the present road, the old roadbed must be considered as such factor. If it is disregarded as such factor, or wholly abandoned, the route designated in the Act loses its identity, and the provision designating it is rendered of no effect. Reasonable reference to the old roadbed must be had in determining the route to be followed.

It is finally contended by the defendant that the Act of 1927 (35 St. at Large, 278) clearly indicates that it was the purpose of the Legislature to vest the State Highway Department with power to make such relocation of highways as in its judgment would be best, and that the words of the

proviso of the Act indicate that the power to make such relocation by the Highway Department existed prior to its enactment.   This proviso is as follows:

"That this section shall not serve to prevent the State Highway Commission from abandoning roads that have been relocated or may hereafter be relocated."   Section 3.

Just what this proviso means, with respect to the relocation of roads, is not clear.   It is contended—and with some apparent merit—that it is intended only to empower the Highway Department *to. abandon* such old roads as the Legislature, after the passage of the Act of 1924, had by Act relocated, or as might thereafter be relocated by legislative enactment.   Giving, however, to this provision of the Act of 1927 a broader construction, we think it may be held that the Legislature thereby intended to imply that the State Highway Department, in the building and construction of any highway named in the Act of 1924, or that might at any time be included in the highway system, is vested with the power and authority in its discretion to make, subject to the controlling factors indicated in the Act, as determining the routes to be followed, such relocation of roads as will conform to the best engineering knowledge in road construction.   But such relocation of the road to be constructed must be made without destroying the identity of the route designated in the Act.

As to the relocation of highways, see *Elliott on Roads and Streets,* Vol. 1.   *Heiple v. Clackamas County,* 20 Or., 147; 25 P., 291.   *Commonwealth v. Cambridge,* 7 Mass., 158. *Bennett v. Wellesley,* 189 Mass., 309; 75 N. E., 717.   *State v. Burgeson,* 108 Wis., 174; 84 N. W., 241.   *Pursell v. Edison Portland Cement Co.,* 65 N. J. Law, 541; 47 A., 587; and *Lowe v. Brannan,* 105 Ind., 247; 4 N. E., 580.

In the present case, the distance between the two points mentioned is 6.8 miles on Route No. 26, and 5.4 miles on the proposed new highway.   At no place between the terminal points of the section of road in controversy does

the proposed new highway touch the old roadbed; the distance between them being substantial and at the widest point nearly two miles. (An examination of plat will aid in an understanding of the situation.) It is clear that the State Highway Department, in laying out the proposed new highway, did so without reasonable reference to the location of the present road as one of the controlling factors in determining the route to be followed.

We are impressed with the frank statement of the whole matter contained in the affidavit of Mr. Moorefield, Chief State Highway Engineer, filed in the case; but conceding, as he states, that the route proposed by the Highway Department is much more desirable than Route 26, the one designated in the Act of 1924, still, as we have shown, the State Highway Department is without authority of law to substitute, between the points named, the proposed route for Route 26, as such action on its part would destroy the identity of Route 26, and would be an abuse of the discretion which it may exercise in the alteration and relocation of highways to be built by it.

The permanent injunction prayed for by the petitioners is granted.

MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.

MR. CHIEF JUSTICE WATTS dissents.