## Richmond

E. W. McMinn, et als. v. J. A. Anderson, et als.

March 7, 1949.

Record No. 3460.

Present, All the Justices.

The opinion states the case.

*Dabney Overton* and *Ammon G. Dunton,* for the appellants.

*J. Lindsay Almond, Jr., Attorney General,* and *C. Champion Bowles, Assistant Attorney General,* for the appellees.

MILLER, J., delivered the opinion of the court.

E. W. McMinn and others, complainants in the lower court, are all residents of Lancaster county and constitute the appellants in this suit. The State Highway Commissioner, J. A. Anderson, and the members of the highway commission, defendants below, are the appellees.

Appellants sought to restrain appellees from constructing and adding to the State highway system a stretch of road about four and one-fourth miles in length, which is now under construction and intended to be included in the system.

By an act of the General Assembly, Acts 1918, ch. 10, p. 9, "The State Highway System" was created and established. That act designated and named certain points from and to which primary roads should run. It provides that the "commissioner shall locate and establish, by a survey or otherwise, as soon as possible the exact routes to be followed by the roads comprising the 'State highway system' as set out above * * * ." State highway Route No. 3, a part of which is now involved in this litigation, was not mentioned in that act. It did not provide for a State highway from Westland to Kilmarnock, Lancaster and thence on to Warsaw. The route by those towns was provided for in 1922 by an act which supplemented and added to the prior act. Acts 1922, ch. 316, p. 538; sec. 1975a, Code, 1942 (Michie). However, that act dropped from the statute the word "exact" and it was not thereafter used in speaking of the location and establishment of roads between the points then or thereafter designated.

This route was actually located and established in the year 1923. As laid out, it took a rather circuitous course. From Chinn's Mill Pond on the eastern line of Richmond county, it extended southeastwardly to Litwalton. There it curved sharply and its course was northeasterly to Nuttsville and thence on to a point near Lively. This section of Route 3, which is five and one-fourth miles in length, is a rough, prolongated half-moon in shape.

By an emergency act passed on September 5, 1919, Acts

1919, ch. 31, p. 53, the powers of the highway commission which had been created by Acts of 1906, ch. 73, p. 71, were added to and enlarged. Among those given was the right of "eminent domain in so far as may be necessary for the establishment, location, construction, reconstruction, alteration and repair of the roads embraced in the 'State Highway System' * * * ." It also reaffirmed and added to the powers of the highway commissioner given in the Act of 1918, p. 9. However, it provided that upon the location and establishment by him of highway routes between points designated in the act which had established the State highway system, the local road authorities or interested freeholders might have an appeal to the commission for review of his location of a route between the points designated. The decision of the commission on such appeal, the right to which had not theretofore existed, was final.

The Act of 1919 also contains this language, "and provided that, where the route *has already been located and established by the commissioner*, under the authority conferred upon him by an act approved January thirty-first, nineteen hundred and eighteen, entitled 'An act to establish a State highway system,' no change shall be made in such route by the commission." (Italics supplied.)

Since the physical location and establishment of State highway Route No. 3, in the year 1923, through the villages of Litwalton and Nuttsville, it has constituted and been maintained as a primary route in the State highway system. From Warsaw in Richmond county, it extends to and across the Lancaster county line and on through the above villages and thence to the towns of Lancaster, Kilmarnock and Westland.

Some months ago appellees undertook to locate and construct this cut-off from Route 3 at Chinn's Mill pond in an almost direct line to a point near Lively in Lancaster county, where it again enters State highway Route No. 3. It furnishes a more direct and shorter route than is afforded by the circuitous road through Litwalton and Nuttsville. Its effect is to by-pass those two villages and that area along the longer route. Its greatest distance from the present

Route No. 3 is near the middle of the four and one-quarter mile stretch where the roads are about a mile apart.

All of appellants· are landowners of Lancaster county and many of them own houses and conduct business establishments on Route 3 at and in the vicinity of Litwalton and Nuttsville. They contend that this primary route which was constructed, established and actually laid out by way of those villages constitutes a permanent State highway over and along that course between Warsaw and Lancaster, points named in the 1922 act, and that this several miles of it cannot now be changed and relocated over and along the shorter route now under construction.

Though the clause contained in sec. 1969e of the Code, 1942 (Michie), relied upon by them says "no change shall be made," they concede that certain changes can be made. In their petition for appeal this language is used: "Appellants do not contend that the Highway Commission may not straighten, change elevations in, widen, or make any other change in such highways which does not substantially alter the location thereof." Such a change as is admitted could be made might be as detrimental or destructive to a business establishment fronting upon a highway as would be caused by material alteration of its route.

Appellees contend that the clause which first appeared in the Emergency Act of 1919 and forbade any change in the route by the commission where it had *already been located* by the commissioner and which was carried into the Act of 1922, p. 673, and subsequent acts in but slightly different language, and which now constitutes a part of section 1969e of the Code, referred only to State highways actually established prior to the Act of 1919. That clause which now reads "where the route has already been located and established in pursuance of law, no change shall be made," they insist applies solely and alone to routes located, established and laid out prior to the effective date of that provision which was September 5, 1919. They further say there nowhere appears from the record any intention on the part of appellees to abandon or close as a State highway that

part of Route 3 that passes through Litwalton and Nutts-ville. Therefore they argue no inhibition exists to prevent the location and construction of this four and one-quarter miles of new highway which will merely constitute a supplemental, shorter and more direct road from the point of its departure from Route No. 3 at Chinn's Mill Pond to where the roads merge again near Lively, Virginia.

Upon establishment of the State highway system in 1918, and the designation of points to and from which primary roads should run, many, and the most heavily traveled of the roads built or constructed at county, city or town expense were to be thereafter maintained by the State. It was not amiss that consideration should have been given to routes already laid out and being used and some provision made to insure their permanence as they had been partially and often wholly built at county, city or town expense.

That act expressly says, "In undertaking the construction of roads on the routes * * * preference so far as practical shall be given such parts of such routes as will form connecting links between permanent roads already constructed * * * to the end that equitable consideration may so far as possible be given those counties, cities and towns that may already have constructed parts of roads constituting the said system * * * ." Acts 1918, ch. 10, p. 9.

When the State took over the construction and maintenance of the primary roads, due regard was sought to be accorded the counties, towns and cities that had constructed the roads then in existence and serving the surrounding communities. Many roads were thereafter taken into the highway system by utilizing, when practicable, the actual routes as they then existed. Yet the commissioner's discretion in the actual location of a road between the anchor points named in the statute was absolute. From his determination and selection of the actual course the road should take between the points named, there was no appeal under the Act of 1918. There was no supervising power or body to review his discretion and location pursuant thereto and nothing to prevent him from changing the location from time to time.

■ The Act of 1919 allowed an appeal to the commission from the decision of the commissioner as to the location of the routes. It was thereby empowered to hear evidence, view the routes and determine which "would best serve the interests of the State." It should be observed that in the ultimate selection and location of the routes the "interests of the State" was the controlling feature. Ample opportunity was given interested parties to be heard to the end that the commission have full information before a route was actually determined upon. However, we find nothing therein to prevent alteration or relocation at a later date of any route except those which had been located and established by the commissioner prior to September 5, 1919, its effective date, or which forbade construction of new roads serving the same or nearby territory.

To prevent the commission from disturbing roads theretofore actually located and established, which had, in many instances, been built at local expense, it provided " * * * that where the route has already been located and established by the commissioner, under the authority conferred upon him by an act approved January thirty-first, nineteen hundred and eighteen, entitled 'An Act to establish the State highway system,' no change shall be made in such route by the commission." The words, "where the route has already been located and established by the commissioner", in our opinion, refer to those routes actually laid out and located prior to the effective date of the 1919 act and not to those located thereafter. Its reference is to what had taken place before or as of its effective date and not what might be done in the future.

■ In 3 C. J. S., p. 895, definitions of the word "already" are given. We there find its meaning, when used in statutes, defined. It is said, " * * * As used in statutes, it refers to the time the act took effect rather than the date of its passage * * * ." See also, *Macon, etc., R. Co.* v. *Macon, etc., R. Co.*, 86 Ga. 83, 13 S. E. 157.

■ This road was actually located and established in 1923. The Act of 1919 wherein the prohibitory language

relied upon by appellants was first used has been repealed and reenacted on several occasions. All of these reenactments except one were subsequent to the year 1923. Acts 1922, p. 673, Acts 1924, p. 670, Acts 1926, p. 294, Acts 1928, p. 589, Acts 1930, pp. 6 and 61, Acts 1932, p. 468. The particular provision now appears in section 1969e of the Code, 1942, (Michie). Its reenactment at subsequent times does not cause that clause, appearing first in the Act of 1919, to perambulate and move forward and so bring within its influence highways established and located at any time previous to each reenactment. That statute reenacted several times since 1919 without alteration of that specific clause except for an inconsequential change in Acts 1922, p. 673, applies to and affects in that particular only those State highways actually designated under the provisions of the Acts of 1918, and located and constructed prior to the effective date of the emergency act. This accepted rule of statutory construction is stated thus in 25 R. C. L., "Statutes", sec. 159, p. 907:

"* * * When a statute continues a former statute law, that law common to both acts dates from its first adoption, and only such provisions of the old act as are left out of the new one are gone, and only new provisions are new laws."

Appellants say the fact that the General Assembly in several instances since 1918, when the State highway system was established, changed, by legislative enactment, the routes of State highways is convincing evidence that no substantial change is authorized without legislative approval. Section 1975s of the Code, 1942 (Michie), allowing changes by the commission, is sufficient answer to this contention. But also upon examination of those enactments referred to and relied on by appellants, such as Acts 1924, p. 390, now sec. 1975n of the Code, 1942, it will be seen that in many instances the change or relocation is mandatory, and in other instances the change deals with roads established between points mentioned in the Act of 1918, and provides for abandonment of the old roads. In other enactments,

such as Acts 1942, ch. 155, p. 199, section 1975xx, Code, 1942 (Michie), anchor points mentioned in sec. 1975a are allowed to be by-passed.

That the inhibition against changing the course of primary highways once established and actually laid out was limited to those that had been located and established before the effective date of the 1919 act, is made certain by the provision of Acts, 1926, Ch. 212, p. 394, now sec. 1975s, Code, 1942 (Michie). It expressly allows the location of parts of existing highways to be altered and even permits sections of the old road to be abandoned as a part of the State highway system. This act is *in pari materia* with the Act of 1919, p. 53, and unless the prohibitory clause of the latter act be limited to primary roads constructed before and as of September 5, 1919, its effective date, the two statutes, as they now appear in the Code in secs. 1975s and 1969e, would be in hopeless conflict.

There is no suggestion whatever in the record that appellees contemplate abandonment of the five and one-fourth miles of highway which passes Litwalton and Nuttsville. All indications are that it will be retained as a highway to serve that area. It is intersected from the south by three secondary State roads. Two of these join at Litwalton and extend southwardly and southwestwardly, respectively, from that village. The other intersects at Nuttsville.

These three secondary roads serve the residents and communities in that area of the county which lies to the west and south of Litwalton and Nuttsville. There is no reason to believe that these roads or any part of that stretch of Route No. 3 into which they merge and which passes by these two villages is to be discontinued or closed. Yet whether or not this five and one-fourth miles of road which was actually located and established as a part of the State highway system could now be abandoned by appropriate proceedings under section 1975s, *et seq*. of the Code of 1942 (Michie), is not before us for decision and upon that we express no opinion.

Westland, Kilmarnock, Lancaster and Warsaw, anchor

points for a primary State route, were first designated in the Acts of 1922, p. 538, and the road was not actually located and established on its course through the two villages until 1923. Though appellants for the ensuing twenty-five years have enjoyed the benefits of a greater volume of traffic by their lands and business establishments than may travel thereby after the new road is opened, and during that time had the privilege to "live in a house by the side of the road and be a friend to man," they now insist upon an extension and perpetuation of those rights and advantages so that they may have a changeless road in a changing world. In our opinion, the provision of the statute they rely on sufficeth not to prevent the construction and inclusion in the State highway system of another nearby road deemed by appellees to be in the interest of the State and for the public weal, though part of the traffic to appellants' property may be diverted and incidental loss thereby occasioned.

We therefore conclude that the construction, relocation and inclusion in the highway system of the new road is not forbidden by the prohibitory language of sec. 1969e relied on by appellants. That restriction against relocation of an existing highway refers only to those State highways running to and from points named in Acts 1918, p. 9, that had been located and established prior to the effective date of the 1919 Act.

We are further of the opinion that had this stretch of road by the two villages been actually located and established prior to the effective date of the 1919 Act, the correct construction of the clause in question which now constitutes a part of sec. 1969e, would not preclude the location, establishment, construction and inclusion of another section of highway in the system which may shorten the distance between existing points, as is contemplated by the construction of this new section, where no intention or purpose is disclosed to abandon any part of the route now in use.

The decree appealed from is affirmed.

*Affirmed.*