[Sac. No. 6039. In Bank. Apr. 25, 1950.]

FRANK H. HOLLOWAY et al., Appellants, v. C. H. PUR-CELL (as Director of the Department of Public Works, etc.) et al., Respondents.

E. Vayne Miller, George W. Artz and H. D. Jerrett for Appellants.

Fred N. Howser, Attorney General, Timothy W. O'Brien, Deputy Attorney General, C. R. Montgomery, Robert E. Reed, Russell S. Munro and Harry S. Fenton for Respondents.

TRAYNOR, J.—Plaintiffs appeal from a judgment for defendants entered after a demurrer to their complaint was sustained without leave to amend.

This action was brought by plaintiffs as taxpayers to enjoin the proposed relocation of a section of Route 3, part of the state highway system extending from Sacramento to the Oregon state line via Yreka. (Sts. & Hy. Code, § 303.) The complaint alleged that defendants, the Director of the Department of Public Works and members of the California Highway Commission, intend to abandon the part of Route 3 that runs along Auburn Boulevard between the cities of Roseville and Sacramento past the places of business of plaintiffs, and to establish a ''proposed new substitute highway . . . over an entirely new location from the established Route 3'' by the construction of a freeway about a mile and a half to the northwest, connecting with the North Sacramento freeway at its present terminus. It was alleged that none ''of said defendants acting in a representative capacity, or otherwise acting in any manner whatsoever, have or has, the power or authority to change, alter, relocate, re-route, or substitute said State Highway Route 3, or any portion thereof as aforesaid, or to abandon or relinquish, or to do any of the things hereinbefore charged against said aforenamed defendants.'' An injunction was sought ''restraining the defendants and each of them from acquiring real property for, and from performing any engineering work on, and from entering into any contract or contracts for, and from preparing, acknowledging, or approving any schedules relating to, and from preparing or honoring any warrants in relation to, and from performing any day labor or administrative work for, or on the construction of said proposed new supposed substitute highway in lieu of a portion of said Route 3 of the California State highway System as alleged and described herein.'' The trial court in a memorandum opinion held that the proposed relocation was

within the statutory and constitutional authority of the state highway commission, and entered a judgment sustaining defendants' demurrer without leave to amend and dismissing the complaint.

There is ample statutory authority for the state highway commission to relocate any part of the state highway system. Streets and Highways Code, section 71, provides: "The commission may alter or change the location of any State highway if in the opinion of the commission such alteration or change is for the best interest of the State." (See, also, Sts. & Hy. Code, §§ 72, 73, 75, 90, 193.) In doing so, "the commission may retain or may summarily vacate and abandon any portion of a State highway which portion has been superseded by relocation, except in case such abandonment would cut off all access to the property of any person which, prior to such relocation, adjoined the highway. The commission shall either retain such highway or relinquish it to the county." (Sts. & Hy. Code, § 835.) It is not contended that, even if the state highway commission were summarily to abandon the old highway, all access to the property of any person would be cut off. The proposed relocation by the commission is not prohibited by Streets and Highways Code, section 303, which designates only the termini of Route 3 (Sacramento and the Oregon state line), and one point along the route (Yreka). The commission may properly relocate any part of the highway within the designated points when in its opinion "such alteration or change is for the best interest of the State." (Sts. & Hy. Code, § 71; *People* v. *Gianni*, 130 Cal.App. 584, 586 [20 P.2d 87].) The Federal Highway Act, to the provisions of which the state has assented (Sts. & Hy. Code, § 820), expressly provides for the revision or relocation of state highways, such as Route 3, that are a part of the primary Federal Aid System, by the state highway commission with the approval of the Federal Bureau of Roads. (23 U.S.C.A. § 6; *Singeltary* v. *Heathman*, (Tex.Civ.App.) 300 S.W. 242, 245.)

Plaintiffs contend, however, that the location of Route 3 is fixed by the terms of the State Highways Act of 1909 (Stats. 1909, ch. 383, pp. 647-652), under which it was acquired by the state in 1915, and cannot be changed until the principal and interest on the indebtedness authorized by that act has been paid. In their view the statutes authorizing the relocation of state highways constructed or acquired under the 1909 act are unconstitutional on the ground that they

accomplish a repeal of the provisions of that act in violation of article XVI, section 1 of the California Constitution.* This contention is without merit.

The State Highways Act of 1909 provided for the construction and maintenance of "a continuous and connected state highway system running north and south traversing the Sacramento and San Joaquin valleys . . . by the most direct and practical route," at a total cost of eighteen million dollars to be financed by the issuance and sale of state highway bonds. Bonds in the amount of five million dollars issued under the 1909 act have not yet been paid and discharged. Although the 1909 act prescribed only the termini of the highway system and not the location of any of the highways, plaintiffs rely on two sentences in section 8 of the act, the first of which provides:

"The highways constructed or acquired under the provisions of this act shall be *permanent in character* and be finished with oil or macadam or both, or of such other material as in the judgment of the said department of engineering shall be most suitable and best adapted to the particular locality traversed." (Italics added.)

Plaintiffs interpret permanence to preclude changes from established routes. There is no support for so narrow a construction. The sentence specifically relates permanence to character of construction, not to location as is evident from the words "finished with oil or macadam or a combination of both as in the judgment of the said department of engineering shall be most suitable and best adapted to the particular locality traversed." In specifying hard surface materials it envisages highways that are built and maintained to endure. There is no implication that the site selected will remain forever. (*Trippeer* v. *Couch,* 110 Ore. 446, 454-457 [220 P. 1012]; *Stoppenback* v. *Multnomah County,* 71 Ore. 493, 500 [142 P. 832].) A duty to construct and maintain highways "permanent in character" does not preclude relocation or realignment of highways to meet the changing needs of traffic. The sense of "permanent" in the statute is durable, not perpetual. No one can predict how long a highway will serve the purposes for which it was constructed. The first sentence in section 8

---

*"'The Legislature shall not, in any manner, create any debt or debts . . . which shall . . . exceed the sum of three hundred thousand dollars . . . unless the same shall be authorized by law for some single object or work to be distinctly specified therein which law shall . . . be irrepealable until the principal and interest thereon shall be paid and discharged. . . .'"

upon which plaintiffs rely requires that highways be constructed of durable materials to insure a free flow of traffic over highways that are adequate to carry it, not to compel the perpetuation of routes that have outlived their original usefulness.

The second sentence of section 8 on which plaintiffs rely provides:

"All highways constructed or acquired under the provisions of this act shall be *permanently maintained and controlled by the State of California.*" (Italics added.)

The requirement of permanent maintenance is not one of permanent location. The purpose of this requirement is obviously to insure state maintenance of the highways so that the burden of maintenance will not fall upon the counties. This provision must be read in connection with the preceding sentence, to the effect that the counties are responsible for the interest on the bonds issued by the state. After the relocation of the part of Route 3 now proposed has been concluded the state will still be controlling and maintaining the highway specified as part of the system described in section 4 of the 1909 act, namely, "a continuous and connected state highway system running north and south traversing the Sacramento and San Joaquin valleys . . . by the most direct and practical route." The requirement of permanent maintenance does not preclude the state from relocating a highway and thereafter maintaining it as relocated. Thus, the Maryland Court of Appeals, interpreting a statute requiring the state to maintain a highway bridge, held that the state could relocate the bridge to meet changed conditions. The "obvious purpose [of the statute] was to provide that so long as the bridge at that point was used as a connection between state highways, the commission should keep it in safe repair, but it did not mean that, when in the judgment of the commission acting in the public interest it became desirable to relocate the highway approaches to it, and to connect those approaches by a bridge, that they could not abandon the old and useless bridge and make that change." (*Huffman* v. *State Roads Comm.,* 152 Md. 566, 581 [137 A. 358]; *Texas & Pacific Ry. Co.* v. *City of Marshall,* 136 U.S. 393, 403 [10 S.Ct. 846, 34 L.Ed. 385]; *Raines* v. *Terrell County,* 169 Ga. 725 [151 S.E. 509]; *Rode* v. *State Highway Comm.,* 58 N.D. 249 [225 N.W. 801, 803].)

The 1909 act provided that a system of state highways

"shall be constructed and acquired as and in the manner provided by law by the department of engineering of said state" (§ 1), that the department of engineering should select the routes of highways to be constructed (§ 4), procure land and rights of way therefor by donation, dedication, lease, or condemnation, and should "have full power and authority to purchase all supplies, material, machinery, and to do all other things necessary and proper in the construction and maintenance" of the state highway system. (§ 8.) The 1909 act did not create the state Department of Engineering. That agency was created by the Legislature in 1907 and was expressly given the authority to acquire land and rights of way for the construction *and relocation* of "roads which have been declared state highways." (Stats. 1907, ch. 183, §§ 9, 10.) The department had the power to relocate state highways under the 1907 act when the 1909 act was passed authorizing it to construct and maintain a state highway system "as and in the manner provided by law" and "to do all . . . things necessary and proper in the construction and maintenance" of that system. There can be no question that the express authority to relocate state highways when necessary in the public interest is one of the "things necessary and proper" to the maintenance of the highway system authorized by the 1909 act. It is contended that sections 9 and 10 of the 1907 act were repealed by the provision of section 14 of the 1909 act that "all acts and parts of acts in conflict with the provisions of this act are hereby repealed." It is clear, however, that the requirement of permanent maintenance and control is in no way inconsistent with the express authority to relocate state highways when necessary in the public interest. (*Huffman* v. *State Roads Comm.,* 152 Md. 566, 581, 583 [137 A. 358] ; *State of Arizona* v. *Carrow,* 57 Ariz. 434, 439 [114 P.2d 896] ; *Wilkinson County* v. *State Highway Comm.,* 191 Miss. 750, 755 [4 So.2d 298].)

█ This interpretation of the 1909 act is in accord with the administrative, legislative, and judicial interpretation that it has always been given. "The contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal.2d 918, 921 [156 P.2d 1] ; *Mudd* v. *McColgan,* 30 Cal.2d 463, 650 [183 P.2d 10] ; *California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294

[140 P.2d 657, 147 A.L.R. 1028]; *County of Los Angeles* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10]; *City of Pasadena* v. *Railroad Commission*, 192 Cal. 61, 65 [218 P. 412].) The attorney general's office has frequently interpreted the 1909 act as not prohibiting the relocation of highways constructed or acquired under its provisions. The California Highway Commission has uniformly interpreted the act as permitting such relocation whenever required by the public interest. A notable example of this interpretation is the 1931 relocation of the northern half of the Ridge Route by which more than 40 miles of highway between Grapevine Station and Castaic originally constructed under the 1909 act were abandoned and replaced by an entirely new 29-mile section. If plaintiffs are correct in their contention, the new Ridge Route should be closed and traffic rerouted over the tortuous curves and dangerous grades of the old road. A large part of Route 3 in Shasta County was relocated by the state in order to run clear of Shasta Dam. Under plaintiffs' theory the road would have to be reconstructed over the old route, which has since been flooded by the dam. (See, also, Stats. 1947, ch. 19, p. 3824, authorizing the relocation of Route 5 to run clear of the proposed reservoir of the Santa Clara Valley Water Conservation District.)

Legislative interpretation of the 1909 act has likewise been uniform. A 1915 statute provided that "the advisory board of the state department of engineering shall have the power to abandon portions of routes of state roads and highways under its jurisdiction, when, in its opinion, such abandonment shall be necessary by reason of alterations or revisions in alignment of portions of routes of state roads and highways by said advisory board and shall be for the best interests of the state." (Stats. 1915, ch. 398, p. 640.) Streets and Highways Code, sections 71, passed in 1921 as Political Code, section 363b, and 835, added in 1935, gave the commission express authority to relocate and abandon state highways. The Legislature has repeatedly altered statutory designations of state highway routes and termini, exercising a power that under plaintiffs' construction of the 1909 act it would not have. (See Sts. & Hy. Code, §§ 311 [amended 1947], 316 [amended 1936], and 323 [amended 1935].)

Although this court has not heretofore interpreted section 8 of the 1909 act, it has consistently upheld the authority of the commission to relocate parts of the state highway

system. (*Rose* v. *State of California*, 19 Cal.2d 713, 732 [123 P.2d 505]; *People* v. *Gianni*, 130 Cal.App. 584, 586 [20 P.2d 87]; *People* v. *Ricciardi*, 23 Cal.2d 390 [144 P.2d 799].) Nothing in that section necessitates a departure from this uniform interpretation of the act.

The cases from other jurisdictions cited by plaintiffs involved attempted administrative relocations of highways contrary to specific routes prescribed by statute (*Boykin* v. *State Highway Dept.*, 146 S.C. 483 [144 S.E. 227]; *Rowland* v. *McBride*, 35 Ariz. 511, 517 [281 P. 207]), or an attempted use of funds from bond issues contrary to the purpose prescribed in the authorizing statute (*Harner* v. *Monongalia County Court*, 80 W.Va. 626 [92 S.E. 781]; *Jarrell* v. *Board of Education*, —— W.Va. —— [50 S.E.2d 442]). The relocation of Route 3 will not be financed by funds derived from the issuance of bonds under the 1909 act; moreover, even if it were, it will be within the termini and general route prescribed by the 1909 act.

█ Plaintiffs also contend that the provision of article IV, section 36 of the California Constitution that "The Legislature shall have power to establish a system of state highways . . . and to pass all laws necessary and proper to construct and maintain the same" precludes the Legislature from authorizing the relocation of any highway once established under that section. This provision is designed solely to authorize the establishment of a state highway system; it cannot be construed as including an unwritten provision that the highways once established can never be relocated even though relocation is required by changed conditions.

█ The second count of plaintiffs' complaint alleged that part of the proposed new highway will be a freeway or limited access highway, and that the construction of such freeway is invalid in that it "tend[s] to create a new and different type of State highway . . . than is provided for in Article IV, section 36, of the Constitution of the State of California." The construction of freeways or limited access highways is within the statutory authority of the state highway commission and the department of public works. Streets and Highways Code section 100.1 provides: "The department is authorized to do any and all things necessary to lay out, acquire and construct any section or portion of a State highway as a freeway or to make any existing State highway a freeway." (See, also, Sts. & Hy. Code, §§ 100.2, 100.3.) Plaintiffs contend, however, that the only type of highway authorized by

article IV, section 36 is one providing unlimited "rights of access, light, view and ingress and egress inherent in a public State Highway or any public highway common to the use of all the people of a free government, as public highways were understood and used prior to and at the time Section 36, Article IV of the Constitution of California was added thereto by the people of said State." In their view, the Constitution prohibits the construction of any type of highway not in general use in 1902, when article IV, section 36 was added to the Constitution. It is contended that inasmuch as freeways and limited access highways cut off access from cross streets and highways, statutes purporting to authorize their construction are unconstitutional. That contention is without merit; it attributes to the California Constitution a rigidity that would freeze the highway system into routes that in time might bear no relation to traffic.

The Constitution authorizes the Legislature to establish a system of state highways adequate to meet the needs of the state, "and to pass all laws necessary or proper to construct and maintain the same." The type of highway that is adequate to meet traffic needs necessarily varies with the character and extent of those needs. Highways adequate for the horse and buggy traffic of 1902 are not adequate for the high-speed motor traffic of 1950. Highways that satisfactorily connected rural communities have been replaced by superhighways, parkways, and freeways designed to meet the needs of heavy interurban automobile, truck, and bus traffic. (See *Stock* v. *Cox*, 125 Conn. 405, 415 [6 A.2d 346] ; *Burnquist* v. *Cook*, 220 Minn. 48, 65-71 [19 N.W.2d 394] ; *State ex rel. State Highway Comm.* v. *James*, 356 Mo. 1161 [205 S.W.2d 534, 537].) Their construction is not constitutionally prohibited by a provision authorizing the establishment of a state highway system merely because there was no need for them when the provision was adopted. (*California Toll Bridge Authority* v. *Kelly*, 218 Cal. 7 [71 P.2d 425] ; *In re California Toll Bridge Authority*, 212 Cal. 298 [298 P. 485].) We conclude that the construction of freeways and limited access highways is "necessary or proper to construct and maintain" a modern state highway system.

The construction of a freeway does not, as plaintiffs contend, necessarily constitute a taking of private property rights of access without due process of law. We are not here concerned with the question whether the state can restrict

230

abutting owners' rights of ingress and egress without compensation therefor. Streets and Highways Code, section 100.3, expressly provides that the construction of freeways "shall not affect private property rights of access, and any such rights taken or damaged within the meaning of Article I, section 14, of the State Constitution for such freeway shall be acquired in a manner provided by law." Rights of access restricted by the construction of freeways are taken or damaged by the state under its power of eminent domain and their taking is compensable under article I, section 14. This court has repeatedly held that it is permissible to take or damage rights of access for which compensation is paid in the construction of a freeway. (*Rose* v. *State of California,* 19 Cal.2d 713, 728 [123 P.2d 505] ; *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818] ; *Beals* v. *City of Los Angeles,* 23 Cal.2d 381 [144 P.2d 839] ; *People* v. *Ricciardi,* 23 Cal.2d 390 [144 P.2d 799].) The relocation of Route 3 and the construction of the freeway may, as plaintiffs assert, injure their business. They are not, however, deprived of rights of access as abutting owners, and the construction of the highway past their places of business gives them no vested right to insist that it remain there. "Though appellants for the ensuing twenty-five years have enjoyed the benefits of a greater volume of traffic by their lands and business establishments, than may travel thereby after the new road is opened . . . they now insist upon an extension and perpetuation of those rights and advantages so that they may have a changeless road in a changing world. In our opinion, the . . . statute [does not] prevent the construction and inclusion in the State highway system of another nearby road deemed to be in the interest of the State . . . though . . . the traffic to appellant's property may be diverted and incidental loss thereby occasioned." (*McMinn* v. *Anderson,* 189 Va. 289 [52 S.E.2d 67, 71] ; *State of Arizona* v. *Carrow,* 57 Ariz. 434, 440-441 [114 P.2d 896] ; *People* v. *Gianni,* 130 Cal. App. 584, 587-588 [20 P.2d 87] ; *Ritzmann* v. *City of Los Angeles,* 38 Cal.App.2d 470, 476 [101 P.2d 541] ; *Spinks* v. *City of Los Angeles,* 220 Cal. 366 [31 P.2d 193].)

Plaintiffs also contend that sections 100.1, 100.2, and 100.3 of the Streets and Highways Code, giving the highway commission the authority to designate and construct freeways on "such terms and conditions as in its opinion will best subserve the public interest" (Sts. & Hy. Code, § 100.2), improperly delegate legislative power to an administrative agency.

The Legislature, however, may establish a broad statutory rule and delegate to an administrative agency the duty of specifically applying that statute within the framework of a sufficiently definite primary standard. "The practice of delegating to administrative officers or boards powers which were originally performed directly by the legislature is of long standing and has met the approval of the highest courts in this state as well as in other jurisdictions." (*Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 658 [91 P.2d 577] ; *Ray* v. *Parker,* 15 Cal.2d 275, 285, 287 [101 P.2d 665] ; *Opp Cotton Mills, Inc.* v. *Administrator,* 312 U.S. 126, 144 [61 S.Ct. 524, 85 L.Ed. 624] ; *United States* v. *Rock-Royal Co-Op,* 307 U.S. 533, 574-577 [59 S.Ct. 993, 83 L.Ed. 1446].) ██ An administrative agency may properly be given the authority to construct and maintain or to abandon and relocate highways, to build freeways or limited access highways, and to do anything else necessary to the maintenance of a state highway system. (*Huffman* v. *State Roads Comm.,* 152 Md. 566, 583 [137 A. 358] ; *Rowland* v. *McBride,* 35 Ariz. 511, 521-522 [281 P. 207] ; *Burnquist* v. *Cook,* 220 Minn. 48, 59 [19 N.W.2d 394] ; *Heavner* v. *State Road Comm.,* 118 W.Va. 630, 633 [191 S.E. 574] ; *Nairn* v. *Bean,* 121 Tex. 355, 360 [48 S.W.2d 584] ; *State ex rel. Coyle* v. *Superior Court,* 128 Wash. 460, 467 [223 P. 3].)

The statutes in question require the commission to exercise its authority only on "such terms and conditions as in its opinion will best subserve the public interest." That requirement provides an adequate standard to guide the commission. This court and the Supreme Court of the United States have repeatedly held it sufficient that the authority be exercised as "necessary or advisable to effectuate the purposes" of the statute (*Ray* v. *Parker,* 15 Cal.2d 275, 287, 289 [101 P.2d 665] ; *United States* v. *Rock-Royal Co-Op,* 307 U.S. 533, 574-577 [59 S.Ct. 993, 83 L.Ed. 1446]), or when "in the public interest it deems it necessary in order to protect the consumer" (*Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U.S. 381, 398 [60 S.Ct. 907, 84 L.Ed. 1263]), or as the agency deems it to be "in the public interest" to so act (*National Broadcasting Co.* v. *United States,* 319 U.S. 190, 225-226 [63 S.Ct. 997, 87 L.Ed. 1344] ; *Yakus* v. *United States,* 321 U.S. 414, 423-427 [64 S.Ct. 660, 88 L.Ed. 834] ; *Jersey Maid Milk Products Co., Inc.* v. *Brock,* 13 Cal.2d 620, 641-643 [91 P.2d 577].) The Legislature has adopted a policy of freeway construction in the public interest. It has properly delegated to

the highway commission the authority to determine when and where freeways will be constructed, and it has properly required that the authority be exercised in accord with the needs of the public interest. Such a delegation of legislative power is valid.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied May 22, 1950.