[L. A. No. 14461. In Bank.—March 26, 1934.]

W. H. SPINKS, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

SHAILOR C. DODGE, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Appellants.

Gibson, Dunn & Crutcher and Woodward M. Taylor for Appellant Griffith Co.

Ray L. Chesebro, City Attorney, Frederick Von Schrader, Assistant City Attorney, and Arthur Loveland and Robert J. Stahl, Deputies City Attorney, for all other Appellants.

O'Mclveny, Tuller & Myers, John A. Powell and Louis W. Myers as *Amici Curiae* on Behalf of Appellant.

Ray C. Eberhard, Henry P. Leavitt, George Winfield Scott, Scott & Eberhard and L. H. Valentine for Respondents.

WASTE, C. The legal question presented by this appeal is: May a municipality, which is the owner in fee of land acquired without restrictions, and set aside for park purposes, devote a portion of the land to public use as a street? Certain findings of the trial court, relating to an opposition to such action by taxpayers and abutting property owners affected by the proposed change of use, have no bearing on the issue presented in this case for our consideration, and may be disregarded in this discussion.

The city of Los Angeles, as the successor of the Mexican pueblo of the same name, is the owner in fee of land within

the corporate limits of the city which for many years has been set apart for and used as a park, known as West Lake Park. A freeholders' charter, adopted by the electors of the city in 1888, and approved by the legislature, provided (sec. 113): "All lands and real property located in the City of Los Angeles, which have been heretofore, or which may be hereafter, set apart or dedicated for the use of the public as a public park or parks, shall forever remain to the use of the public as such park or parks, inviolate and no part of said lands or real property shall ever be used or occupied for any other purpose." This provision was later amended, and became section 119b, which read: "All lands belonging to the city which have heretofore or which hereafter may be set apart or dedicated for the use of the public as a public park, shall forever remain to the use of the public inviolate; *provided,* however, that the Board of Park Commissioners may, with the approval of the Council, given by ordinance . . . *authorize the opening, establishment and maintenance of streets or other public ways in or through such parks;* . . . " [Italics supplied.] (Stats. 1917, p. 1686.) Twice since the adoption of section 119b it has been amended in matters not here material, and is now section 178 of article XVI of the charter of the city.

Proceedings were initiated by the city council and the board of park commissioners for the extension of Wilshire Boulevard, in part approximately across the center of West Lake Park, as part of the major traffic street system of the city. A contract for the extension and construction of the street was entered into when the plaintiffs brought these actions to perpetually enjoin and restrain the construction of the street across the park. Judgment was entered for the plaintiffs, and the defendants have appealed. The foregoing are the facts, and only the one question of law heretofore stated is presented.

Where a tract of land is donated to a city with a restriction upon its use—as, for instance, when it is donated or dedicated solely for a park—the city cannot legally divert the use of such property to purposes inconsistent with the terms of the grant. A less strict construction is adopted as to dedications made by the public. (*Slavich* v. *Hamilton,* 201 Cal. 299, 303 [257 Pac. 60].) The case here is not one of the type first referred to, in which a donor transfers property to a municipality for a fixed and definite purpose

defined in the grant, and where the rule of strict construction is to be applied. Acting under authority of its charter, and through the action of its legislative body, the city is only dedicating its own property to a different public use than that to which it has been heretofore subjected.

The right of a municipality to meet changing conditions in its development cannot be denied, even though in so doing it imposes burdensome restrictions upon private property. *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 Pac. 381, 38 A. L. R. 1479], and *Jardine* v. *City of Pasadena,* 199 Cal. 64 [248 Pac. 225, 48 A. L. R. 509], are leading cases in this state on that subject. The authorities establish, also, that an abutting owner has no special right or interest which entitles him to insist upon the continued use of public property for the purpose to which it has been dedicated. (*Reichelderfer* v. *Quinn,* 287 U. S. 315 [53 Sup. Ct. 177, 77 L. Ed. 331]; *Polack* v. *Trustees, etc.,* 48 Cal. 490; *Seattle Land Imp. Co.* v. *City of Seattle,* 37 Wash. 274 [79 Pac. 780].) The Reichelderfer case, *supra,* is particularly pertinent here, because it involved the effort of an owner of land abutting on a park to enjoin the erection of a publicly owned structure in the park. It was squarely held in that case that as it acquired the fee to the park lands, as did the city in this case, the government, by dedicating the lands to a particular use, did not purport to deprive itself of the power to change that use and devote the lands to other purposes, and the abutting owner cannot complain if that be done.

There being no dispute on the material facts, the judgment is reversed and the cause is remanded to the lower court with the direction that it enter judgment for the defendants.

Shenk, J., Thompson, J., Curtis, J., Langdon, J., Preston, J., and Seawell, J., concurred.

Rehearing denied.