[Civ. No. 1272. Fifth Dist. May 19, 1971.]

L. B. JONES et al., Plaintiffs and Appellants, v.
CITY COUNCIL, CITY OF OAKDALE et al.,
Defendants and Respondents;
DAVID SONDENO, Real Party in Interest and Respondent.

**COUNSEL**

Jensen & Pendergrass and Philip P. Pendergrass for Plaintiffs and Appellants.

Bush, Ackley, Milich & Hallinan and Thomas N. Hallinan for Defendants and Respondents.

James D. Glenn, Jr., for Real Party in Interest and Respondent.

**OPINION**

**GARGANO, J.**—This is an appeal from a judgment of the Superior Court of Stanislaus County denying appellants' petition for a writ of mandate to compel respondents to vacate an order granting real party in interest a special use permit to operate a mobilehome park in an R-A (residential-agricultural) zone or use district as established by the City of Oakdale's land use ordinance. Under this ordinance certain defined uses are permitted in all but a few zones or use districts on the procurement of a use permit from the planning commission. But, because of the peculiar

characteristics of such permitted uses, before issuing the permit the planning commission, after conducting a public hearing, must determine that the use will not "be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood of such proposed use or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City."

A brief review of the facts is helpful.

In 1968 David Sondeno filed an application (his third) with the Planning Commission of the City of Oakdale for a special use permit to construct a mobilehome park on a parcel of land fronting on Old Stockton Road near a point where the road dead-ends into the Stanislaus River. The land is located in an R-A use district about 1,780 feet north of the intersection of Old Stockton Road and "A" Street. Because a mobilehome park is a permitted use in such a district upon the procurement of a use permit, the planning commission set Sondeno's application for hearing as required by the city ordinance.

At the hearing the planning commission considered written reports from the planning director, the director of public works, the superintendent of streets, the fire chief and chief of police, as well as protests and testimony from property owners who were opposed to the proposed use. The commission approved Sondeno's application, subject to several protective conditions and upon the further condition that he comply with all requirements imposed by the city's responsible officials. The property owners appealed to the city council, and their appeal was denied. This litigation followed.

■ We rule out appellants' first contention that there was no substantial evidence to sustain the planning commission's implied finding that the operation and maintenance of a mobilehome park on the proposed site would not be unreasonably incompatible with or injurious to surrounding properties or detrimental to the health and general welfare of persons residing or working in the neighborhood or to the general welfare of the city. The site is located within the proximity of a concrete pipe yard and the Southern Pacific Railroad tracks, and there was evidence that the proposed use would enhance property values in this relatively undeveloped area; a land planning engineer testified that the mobilehome park plan called for "an environment of good living" with trees, shrubs, a playground area and a recreation center and would attract permanent type mobilehomes.

Furthermore, under the city's land use ordinance, in determining

whether the proposed use was unreasonably incompatible with the area or detrimental to the general welfare of persons residing or working in the neighborhood and injurious to surrounding properties, the planning commission was required to consider such factors as "(1) damage or nuisance from noise, smoke, odor, dust, vibration, etc.; (2) hazard from explosion, contamination or fire; (3) hazard occasioned by unusual volume or character of traffic or the congregating of a large number of people or vehicles." Significantly, as to these vital factors, the reports of the responsible city officials were all favorable. The planning director reported that the area was being planned for residential usage, and that a mobilehome park was more compatible with that use than the existing nonconforming concrete pipe yard. The director of public works stated that the City of Oakdale needed a mobilehome park and indicated that Sondeno's land could "only be developed by some form of high-density use to warrant the cost of installing water and sewer services"; he recommended sewer mains, street widening, utilities, street lighting, fire plugs and similar facilities. The superintendent of streets raised no objection to the project so long as it met "the requirements of the Public Works Department for all installations of facilities such as drainage, etc." The fire chief raised no objection, provided the site had "adequate fire plugs, water mains and adequate access to all areas." The chief of police made recommendations regarding traffic safety; he did not oppose the use.

■ Appellants complain because the trial judge did not reweigh the evidence. Other than showing a slight increase in the traffic flow on Old Stockton Road, appellants presented no positive evidence to prove that the proposed use would detrimentally affect their welfare or injure their properties; they seemingly objected to the development because it would upgrade the neighborhood and increase property taxes. It is patent that a use which upgrades a neighborhood is not detrimental to residents or injurious to surrounding properties even though it increases property taxes. In any event, it was beyond the power of the trial judge to reweigh the evidence. The administrative decision in this case did not involve or substantially affect any fundamental vested right, and the court's inquiry was limited to ascertaining whether there was before the planning commission and the city council any substantial evidence, contradicted or uncontradicted, to support their findings (*Stoddard* v. *Edelman,* 4 Cal. App.3d 544, 551 [84 Cal.Rptr. 443]). ■ As our Supreme Court said in *Bixby* v. *Pierno,* 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242]: "If the administrative decision does not involve, or substantially affect, any fundamental vested right, the trial court must still review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any

errors of law, but the trial court need not look beyond that whole record of the administrative proceedings."

■ Appellants next contend that the planning commission and the city council exceeded their jurisdiction in issuing a special use permit, because Sondeno's property fronts on Old Stockton Road at a point where the road dead-ends into the Stanislaus River. They assert that the driveways of the proposed mobilehome park will not have access to a public thoroughfare as required by subdivision (a) of section 18612 of the Health and Safety Code.[1] Appellants argue that a thoroughfare is a street or a highway affording an unobstructed exit at each end into another street or public passage (*Gilfillan* v. *Shattuck*, 142 Cal. 27 [75 P. 646]; Black's Law Dictionary (4th ed. 1957)).

The access requirement of section 18612 is only one of several minimum requirements enacted by the Legislature to protect the health, comfort and welfare of mobilehome owners who rent lots located in mobilehome parks. The section, a part of the State Housing Law, is found in chapter V of division 13, part 2 of the Health and Safety Code; chapter V contains the minimum standards for mobilehome parks, including regulations governing access, construction, electricity, water, laundry and sanitation. When the section is viewed in this light, it is reasonably clear that the regulation requiring each mobilehome to have access from the mobilehome lot to a driveway of not less than 25 feet in clear width, and all driveways to have unobstructed access to a public thoroughfare, is for the benefit of mobilehome owners, not people living or working in the neighborhood; it prevents landlocking and makes certain that expensive mobilehomes shall have convenient access to and from the mobilehome lots. Because Old Stockton Road intersects "A" Street at a distance of about 1,780 feet south of Sondeno's property, and because "A" Street is a public street open at both ends, the trial court correctly found "that the proposed mobilehome park has access to a public thoroughfare . . ." within the ambit of the section.

Appellants argue that the access requirement of section 18612 was adopted by the Legislature to take care of the increased flow of traffic caused by a high-density development. We do not subscribe to this viewpoint. If the Legislature intended the driveways of mobilehome parks to open directly on public thoroughfares, it would have said so instead of merely stating that "all driveways shall have clear and unobstructed access to a public thoroughfare." Also, if traffic control was the legislative pur-

---

[1]Subdivision (a) of section 18612 reads: "Each mobilehome shall have access from the mobilehome lot to a driveway of not less than 25 feet in clear width. All driveways shall have clear and unobstructed access to a public thoroughfare."

pose, as appellants suggest, the Legislature would have adopted similar requirements for apartment houses, condominiums, motels, hotels and trailer parks. So far as we have been able to ascertain, there are no statutory enactments requiring the driveways of such or similar high-density developments to open directly on public thoroughfares.

The judgment is affirmed.

Stone, P. J., and Brown (G. A.), J., concurred.