[Civ. No. 49516. Second Dist., Div. Three. Aug. 25, 1977.]

GRACE E. SIMONS, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

G. G. Baumen for Plaintiff and Appellant.

Burt Pines, City Attorney, Claude E. Hilker, Jerome Montgomery, Assistant City Attorneys, and Gregory C. O'Brien, Jr., Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**FORD, P. J.**—Grace E. Simons, individually and for and on behalf of Citizen's Committee to Save Elysian Park, appeals from a judgment denying a writ of mandate. Appellant sought a writ of mandate pursuant to Code of Civil Procedure section 1094.5 to set aside, vacate and annul the action of the City Planning Commission and the City Council of the

City of Los Angeles in approving plans for the construction of a firearms training simulator building on the grounds of the Los Angeles police training facility, commonly known as the Police Academy, which is located on a 21-acre site situated in Elysian Park in the City of Los Angeles.

The plans were approved by the City Planning Commission of Los Angeles (hereinafter Commission) on March 29, 1973, in City Plan case No. 8404. On April 4, 1973, appellant sought to file a notice of appeal with the city council with respect to the action of the Commission but the appeal was rejected. Thereafter the Court of Appeal, in an unpublished opinion (2d Civ. No. 43747), reversed the trial court and ordered the issuance of a writ of mandate compelling the Commission to accept for filing appellant's notice of appeal and to transfer said appeal to the city council.

Pursuant to a writ of mandate issued by the superior court, the Planning Committee of the Los Angeles City Council conducted a hearing with respect to appellant's appeal on August 19, 1975. Thereafter, the city council adopted the recommendation of its planning committee and determined that the Police Academy is a "deemed to be approved" conditional use site and is permitted under section 12.24, subdivision F, of the Los Angeles Municipal Code, that the action of the Commission in approving plans for the construction of a firearms training simulator building on the site was proper in all respects, and that appellant's appeal be denied.

On September 17, 1975, appellant filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5, seeking to annul the action of the Commission and the city council in approving the plans for the proposed construction "except and unless" an application for a conditional use permit is filed with respect to the questioned structure and in processing said application the Commission and the city require in connection therewith that an environmental impact report be prepared.

A hearing was had in the superior court on appellant's petition. The administrative record consisting of city council file No. 71-3216 and City Plan case file No. 8404 was admitted in evidence, along with the verified pleadings, respondents' answer, and the exhibits attached to petitioner's supplemental memorandum of points and authorities filed on December 26, 1975. The trial court announced its decision denying a peremptory

writ and, upon appellant's request therefor, findings of fact and conclusions of law were signed by the trial court.

■ In reviewing the city council's determination, the trial court applied the independent judgment standard, reweighing the evidence and making its own independent findings. The independent judgment standard of review is applicable in cases where the agency's decision substantially affects a fundamental vested right. Where such a right is not substantially affected, the trial court's inquiry is limited to a determination of whether or not the agency's findings are supported by substantial evidence in light of the whole record. (*Strumsky* v. *San Diego County Employees Retirement Assn.*, 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].) As was said in *Mountain Defense League* v. *Board of Supervisors*, 65 Cal.App.3d 723, at page 730 [135 Cal.Rptr. 588]: "A fundamental, vested right is one 'which has been legitimately acquired or otherwise "vested," and . . . is of a fundamental nature from the standpoint of its economic aspect or its "effect . . . in human terms and the importance . . . to the individual in the life situation" ' (*Transcentury Properties, Inc.* v. *State of California*, 41 Cal.App.3d 835, 844 [116 Cal.Rptr. 487])."

In *Spinks* v. *City of Los Angeles*, 220 Cal. 366 [31 P.2d 193], a case involving a suit brought by adjoining landholders to enjoin construction of an extension of Wilshire Boulevard across the center of Westlake Park, the court stated (220 Cal. at p. 369): "The authorities establish, also, that an abutting owner has no special right or interest which entitles him to insist upon the continued use of public property for the purpose to which it has been dedicated. [Citations.]" (See *Holloway* v. *Purcell*, 35 Cal.2d 220, 230 [217 P.2d 665].)

In *Topanga Assn. For a Scenic Community* v. *County of Los Angeles*, 11 Cal.3d 506, 510, footnote 1 [113 Cal.Rptr. 836, 522 P.2d 12], the court noted that a decision of the Los Angeles Regional Planning Commission granting a zoning variance to a private company allowing it to establish a mobile home park in Topanga Canyon did not touch upon any fundamental vested right of the plaintiff, an incorporated nonprofit organization composed of taxpayers and owners of real property in the canyon. In *Jones* v. *City Council*, 17 Cal.App.3d 724, 728 [94 Cal.Rptr. 897], the court held that an order of a city council granting a special use permit to operate a mobile home park in an R-A zone did not affect any fundamental vested right of protesting property owners in the area. (*Mountain Defense League* v. *Board of Supervisors, supra*, 65 Cal.App.3d 723, 730; *Stoddard* v. *Edelman*, 4 Cal.App.3d 544, 551 [84 Cal.Rptr. 443].)

In the case before this court, the determination of the Commission and the city council, in approving plans for the construction of a firearms training simulator building on the grounds of the Los Angeles police training facility, commonly known as the Police Academy, did not substantially affect any fundamental vested right of appellant. ■ However, the fact that the trial court applied the wrong standard of review in making its determination upholding the local agency's action does not affect the decision to be made by this court on appeal. If the trial court had applied the proper standard of review it would have been limited to a determination of whether or not the findings of the local agency were supported by substantial evidence in light of the whole record. (*Strumsky* v. *San Diego County Employees Retirement Assn.,* *supra,* 11 Cal.3d 28, 44-45.) Where the substantial evidence test applies, the appellate court is limited to the same review as is applicable in the trial court. (*Neely* v. *California State Personnel Bd.,* 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64] [disapproved on an issue not pertinent here in *Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 587-588, fn. 7 [100 Cal.Rptr. 16, 493 P.2d 480)].) Accordingly, in this case we can ignore the trial court's independent findings and limit our review to the question of whether the agency's findings were supported by substantial evidence in light of the whole record.

After the hearing held by the city council relative to appellant's appeal, the city council adopted the report of its planning committee, and that report constitutes the administrative findings in this matter. Those findings contain the following pertinent facts: "On February 26, 1925, at a meeting of the Los Angeles Park Commissioners, a temporary permit was issued to the Los Angeles Police Department for the use of Elysian Park as a revolver range. At that time, Elysian Park was unzoned. [¶] After May 23, 1930, the Elysian Park area was zoned R4, designated as an 'unlimited multiple and institutional' residential zone. During the 1930's, Police Department training activities gradually developed at the Revolver Club facility. On August 22, 1935, by Resolution 178, the Board of Parks Commissioners of the City of Los Angeles granted to the Los Angeles Revolver and Athletic Club a 25-year permit to operate at its location in Elysian Park. [¶] Effective June 1, 1946, Zoning Ordinance 90,500 was adopted, adding Section 12.24 to the Los Angeles Municipal Code. As Subsection B-9 thereof, the ordinance provided: 'Any of the above uses existing at the time this section became effective, shall be deemed to have been approved by the Commission and nothing in this section shall be construed to prevent the enlargement of existing buildings for such uses . . . .' [¶] Among the above

'uses' referred to by Section 12.24 were 'educational institutions, government enterprises (Federal, State and local) and public service uses or structures'. [¶] Effective December 10, 1951, by Ordinance No. 98,909, the word 'lawfully' was inserted into Section 12.24-F of the Los Angeles Municipal Code, to require that the above uses must be 'lawfully existing' at the time the amending ordinance became effective. [¶] Although it was not required to do so, on June 13, 1951, in connection with City Plan Case No. 3717, relating to a plan approval similar to that involved herein, the Planning Commission specifically determined that the Police Academy was a deemed to be approved Conditional Use. This determination has been administratively recognized thereafter in connection with several later structural additions to buildings at the Police Academy. [¶] The appellant read and submitted a prepared statement regarding her position in opposing the Firearms Training Simulator Building. She argues that the City Charter holds public park lands to be 'inviolate' and that they can never be used for non-park purposes, notwithstanding the adoption of the Zoning Code in 1946. It is her feeling that there could not have been a lawful Police Academy in Elysian Park in 1946 and so, the Academy could not later have become a deemed to be approved Conditional Use. She believes that the Academy should now apply for a Conditional Use Permit and the required public hearings be held. City Planning staff has consistently taken the position for the past 25 years that no Conditional Use permit is required for any addition to or modification of existing buildings upon the Police Academy site, under the authority of Section 12.24-F of the Los Angeles Municipal Code: [¶] F. Existing Uses. Any lot or portion thereof being lawfully used for any of the purposes enumerated in this section at the time the property is first classified in a zone wherein such use is not permitted by right or at the time the use is prohibited by reason of an amendment to this article changing the permitted uses within the zone, shall be deemed to be approved site for such conditional use which may be continued thereon. Further, the conditions included in any special district ordinance, exception or variance which authorized such use, shall also continue in effect. [¶] Said section is commonly referred to as the 'deemed to be approved Conditional Use' section of the Municipal Code. It is, in effect, a grandfather clause. It is the Planning staff's position that for the reasons developed below, the Los Angeles Police Academy should be considered to have been 'grandfathered in' as a permitted use of the subject land, notwithstanding that in 1946 the area in which it was located was zoned R1-1. [¶] . . . Citizens in favor of the presence of the Police Academy and the Firearms Training Simulator building stated that they need the police protection in this area, that it has been there for many years, and that they enjoy a sense of safety

because of it. Those who spoke in opposition to the facility and in favor of the appeal stated that they need the park as public park land for reasons of mental health and that the area should be restored to the citizens for park land use only. [¶] In view of the above, and after careful consideration of all of the material in the case file and all of the testimony presented by the representatives of the involved City Departments and interested persons, the members of the Planning Committee RECOMMEND, as recommended by the Director of Planning, that by the adoption of this report, the Council determines as follows: [¶] 1. That the Police Academy is a *deemed to be approved* Conditional Use site and is permitted under Section 12.24-F of the Los Angeles Municipal Code. [¶] 2. That the action taken by the Los Angeles City Planning Commission on March 29, 1973, in approving the plans for the Firearms Training Simulator at the Los Angeles Police Academy was proper and in accordance with the authority set forth in the Los Angeles Municipal Code."

On this appeal appellant points to the provisions of Los Angeles City Charter article XVI, section 170, subdivision (3), which provides in part as follows: "All lands heretofore or hereafter set apart or dedicated as a public park shall forever remain to the use of the public inviolate . . . ." Appellant contends that in 1946, at the time of the enactment of Zoning Ordinance 90,500, which added section 12.24 to the Los Angeles Municipal Code, the above charter provision (then § 178) controlled the use of Elysian Park and as a result "police training activities could not have been lawfully conducted in or on this park land at the time of the enactment of such ordinance [90,500] in 1946." Thus appellant argues that police training activities conducted on park land could not be deemed an existing approved conditional use within the provisions of Los Angeles Municipal Code section 12.24.

We note that article XVI, section 172, of the Los Angeles City Charter provides as follows: "Notwithstanding any other provisions of this charter or of any ordinance to the contrary, jurisdiction over that portion of Elysian Park described in words, figures and maps in Council File 70-5114 and supplements thereto, containing 21.464 acres, more or less, and which was added as of July 1, 1972, primarily as a police training facility, is transferred to the Department of Public Works for use as public buildings and grounds, including use as police training facilities and related purposes." The validity of charter section 172 was upheld in *Simons* v. *City of Los Angeles,* 63 Cal.App.3d 455 [133 Cal.Rptr. 721], another case brought by appellant Simons and others, seeking to prevent

police recruits from engaging in training activities in Elysian Park and seeking a declaration of the invalidity of section 172.

Despite the language of charter section 172, it is appellant's position in this case that zoning ordinances control the use of the land in question and that, since Elysian Park is zoned R-1, the city council could not approve construction of the firearms training simulator building on the grounds of the Los Angeles Police Revolver and Athletic Club, Inc., unless and until the club applied for and obtained a conditional use permit pursuant to Municipal Code section 12.24.

At the time of the hearing before the city council relative to appellant's appeal in this case, appellant was litigating the validity of charter section 172, which litigation, as noted hereinabove, finally resulted in the appellate decision in *Simons* v. *City of Los Angeles, supra.* Accordingly, the city did not rely on charter section 172 in approving the plans for construction of the questioned structure. Much of the argument on this appeal concerns whether or not the police training activities conducted on the grounds of the Los Angeles Police Revolver and Athletic Club in 1946 (at the time Elysian Park was zoned R-1) constituted a "deemed approved conditional use" within the provisions of Los Angeles Municipal Code section 12.24, subdivision B-9, as it existed in 1946 (now see § 12.24, subd. F, and sub. B-1(e), (h) and (k)). We do not address ourselves to those arguments because we decide here that charter section 172 supersedes any local zoning ordinance and controls the uses to be made of the 21.464 acres of land in Elysian Park.

California Constitution article XI, section 5, subdivision (a), provides as follows: "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws. *City charters adopted pursuant to this Constitution shall supersede any existing charter, and with respect to municipal affairs shall supersede all laws inconsistent therewith."* (Italics added.)

As was said by the court in *Brown* v. *City of Berkeley,* 57 Cal.App.3d 223, at pages 230-231 [129 Cal.Rptr. 1]: "Ordinances are invalid if they conflict with the charter. (*Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 13 [309 P.2d 481].) ' . . . The charter of a municipality is its constitution. (*In re Pfahler,* 150 Cal. 71, 82 [88 Pac. 270, 11 Ann.Cas. 911. 11 L.R.A. (N.S.) 1092]; *Platt* v. *San Francisco,* 158 Cal. 74, 84 [110 Pac.

304].) Any ordinance passed by a municipal corporation within the scope of the authority expressly conferred on it has the same force within its corporate limits as a statute passed by the Legislature has throughout the state. [Citations.] To be valid, an ordinance must harmonize with the charter. (*South Pasadena* v. *Terminal Ry. Co.,* 109 Cal. 315 [41 Pac. 1093].) An ordinance can no more change or limit the effect of the charter than a statute can modify or supersede a provision of the state Constitution. (McQuillin, Municipal Corporations, 2d ed., sec. 682.)' (*Marculescu* v. *City Planning Com.* (1935) 7 Cal.App.2d 371, 373-374 [46 P.2d 308].)"

■ Section 172 was added to the Los Angeles City Charter by approval of Proposition U by the voters of the City of Los Angeles at a general election held on November 7, 1972. ■ As was said by the court in *Simons* v. *City of Los Angeles, supra,* 63 Cal.App.3d 455, at page 469: "The city charter may be adopted by a majority vote of the electors, and may be amended, revised or repealed in the same manner. (Cal. Const., art. XI, § 3, subd. (a).) ■ Section 269 of the Los Angeles City Charter permits amendments by the voters. By adopting the charter amendment provision now contained in section 172, the voters have rededicated public park land to non-park purposes in a manner that is not inconsistent with charter requirements."

The use of the property to which reference is made in charter section 172 is not governed by provisions of zoning ordinances zoning Elysian Park as R-1 but, rather, is governed by the charter provision which states that the land is "for use as public buildings and grounds, including use as police training facilities and related purposes." Zoning ordinances are designed to regulate the use of land. Where the use of a certain parcel of land is set forth explicitly in a later enacted charter provision, the charter provision must prevail in determining the nature and validity of the land use. The property upon which the Police Academy is conducted has, in effect, been rezoned. (Cf. *Associated Home Builders etc., Inc.* v. *City of Livermore,* 18 Cal.3d 582, 596 [135 Cal.Rptr. 41, 557 P.2d 473].)

The construction of a firearms training simulator building on the grounds of the Police Academy is clearly within the use of the property allowed by section 172 of the charter "as police training facilities." No application for a conditional use permit was required prior to such construction.

■    Appellant contends that an Environmental Impact Report (EIR) was required pursuant to Public Resources Code section 21151[1] in connection with the building of the questioned structure. Respondents contend that appellant's claim is barred by the applicable statute of limitations and that, in any event, the proposed construction was categorically exempt from the requirements of the California Environmental Quality Act (CEQA).

On March 16, 1973, the Los Angeles Bureau of Public Works submitted a report to the Board of Public Works which was adopted by that board for filing with the Los Angeles County Clerk. The report set forth the determination of the board that construction of the proposed Police Academy firearms training simulator building was categorically exempt from the requirement of preparing an EIR pursuant to article 8 of the State Guidelines, classes 3 and 11 (as a small facility or accessory structure).[2] On March 29, 1973, the Los Angeles City Planning Commission considered and approved plans for the subject building. The construction was completed in mid-summer 1973.

On April 4, 1973, appellant herein sought to file a notice of appeal pursuant to Municipal Code section 12.24, subdivision B-3(e). The Commission refused to accept the notice of appeal for filing. On April 24, 1973, appellant filed a petition for a writ of mandate in the superior court (not the petition involved in this appeal), seeking to compel the Commission "to file the notice of appeal and transmit same to the City Council or to consider the application of the Bureau [of Public Buildings] for approval of the plans to be an application for a conditional use permit and to hold public hearings thereon pursuant to section 12.24 [subdivision] B-3 (b)." The petition was denied by the superior court. On appeal (in case No. 2d Civ. 43747) this court, in an unpublished opinion, reversed the judgment with directions to issue a writ of mandate compelling respondents to accept for filing appellant's notice of appeal.

---

[1]Public Resources Code section 21151 provides in pertinent part as follows: "All local agencies shall prepare, or cause to be prepared by contract, and certify the completion of an environmental impact report on any project they intend to carry out or approve which may have a significant effect on the environment."

[2]In the report it is stated as follows: "The Bureau of Public Buildings is of the opinion that the proposed Police Academy 'Simulator' Building is an accessory building, a minor extension of existing Police Academy Firearms Training Facilities (Firing ranges and related structures) which are centrally located on the Police Training Academy premises which spreads out over 21 acres. . . . [¶] This accessory building, small in size, 30′ × 48′ will house highly specialized computerized equipment for audio-visual firearms training, an essential element and extension of the present Firearms Training Program at the Police Academy."

Appellant's notice of appeal thereafter filed with the Commission did not raise any issue concerning the alleged necessity for an EIR. However, attached thereto was a document dated March 29, 1973, addressed to the Commission and prepared by appellant wherein the claim was made that the Bureau of Public Buildings improperly determined that an EIR was not required. Also, in a letter dated August 19, 1975, addressed to the city council, appellant claimed that "both State and Federal Environmental Quality Acts" were not complied with.

In the petition for writ of mandate filed in this action on September 17, 1975, appellant contended that an EIR was required prior to approval of the plans for construction of the questioned building.

Public Resources Code section 21167, subdivision (d), provides in relevant part as follows: "Any action or proceeding alleging that a public agency has improperly determined that a project is not subject to the provisions of this division pursuant to . . . Section 21085 [categorical exemptions] . . . shall be commenced within 35 days after the filing by the public agency . . . of the notice authorized by subdivision (b) of Section 21108 or subdivision (b) of Section 21152. If such notice has not been filed, such action or proceeding shall be commenced within 180 days of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project."

Appellant filed the first petition for writ of mandate referred to herein on April 24, 1973. However, in that proceeding appellant did not seek to set aside the Commission's action on the ground that it had improperly determined that the project was exempt from the requirements of CEQA. The first time appellant raised that issue before the superior court was on September 17, 1975, in the petition for writ of mandate filed in the matter presently before this court, three years after the construction had been completed. Appellant's proceeding with respect to the validity of the city's action based upon CEQA appears to be barred by the statute of limitations set forth in Public Resources Code section 21167. (See *Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.,* 51 Cal.App.3d 648, 666 [124 Cal.Rptr. 635].)

Appellant argues, however, that she could not assert her contentions under CEQA in her first writ of mandate proceeding because she had been denied her right to appeal to the city council by the Commission and she was required first to exhaust her administrative remedies before she could bring suit based on the city's noncompliance with CEQA. This

court in case No. 2d Civil 43747 determined that appellant had a statutory right to appeal to the city council the matter of the validity of the Commission's approval of the plans for construction of the questioned training facility. It is argued that appellant had a concommitant duty to pursue that appeal and exhaust the administrative remedies before resorting to an action pursuant to Public Resources Code section 21167. ■ We need not venture into this procedural thicket, however, for we have determined that there was substantial evidence in support of the finding that an EIR was not required prior to construction of the firearms training simulator building because the structure was categorically exempt.[3]

Title 14, California Administrative Code, section 15103, exempts "new construction of small structures" from the requirement for the preparation of environmental documents. Small facilities or structures are described therein in part as follows: "Class 3 consists of construction and location of single, new, small facilities or structures and installation of small new equipment and facilities including but not limited to: (e) Accessory (appurtenant) structures . . . ." Section 15111 exempts "accessory structures" defined therein as follows: "Class 11 consists of construction, or placement of minor structures accessory to (appurtenant to) existing commercial, industrial, or institutional facilities, including but not limited to (a) On premise signs; (b) Small parking lots."

The administrative record herein contains a staff report to the City Planning Commission by the zoning plans section which was prepared in 1973 prior to approval of the plans for the questioned structure. That staff report stated that the planned construction was of a 32-foot by 48-foot concrete block building containing a partial mezzanine which was to be constructed "adjacent to the pistol range maintained in connection with the Los Angeles Police Academy." Therein it was further stated as follows: "The proposed firearms training simulator building is designed to house sophisticated computer projection and television equipment necessary to simulate situations which may require the use of weapons. Apparently the weapons used in the training procedure will involve either blank cartridges with wax bullets or some

---

[3]Title 14, California Administrative Code, section 15100, provides as follows: "Section 21084 of the Public Resources Code requires these Guidelines to include a list of classes of projects which have been determined not to have a significant effect on the environment and which shall, therefore, be exempt from the provisions of the Environmental Quality Act of 1970. [¶] In response to that mandate, the Secretary for Resources has found that the following classes of projects listed in this article do not have a significant effect on the environment and they are declared to be categorically exempt from the requirement for the preparation of environmental documents."

electronic device and since it is housed entirely within a . . . [cement] block building, no noticeable noise should emanate from the facility. . . . [¶] The proposed construction will not displace any automobile parking area, will apparently not involve increased attendance at the training academy, nor will it require the removal of shrubs or trees from the site."

In appellant Simons' suit challenging the validity of charter section 172 (*Simons v. City of Los Angeles, supra,* 63 Cal.App.3d 455) she contended that the filing of an EIR was required as a condition precedent to submitting the proposed charter amendment to the electorate. In that case the court stated (63 Cal.App.3d at pp. 465-466) as follows: "In the present case the underlying activity is the use of the Academy facilities in Elysian Park by police recruits for training, which has continued over a period of more than 40 years without substantially altering the environment or unduly burdening or distressing the local population. The activity advanced by the ballot did not constitute a 'proposed project' but merely formalized that which had developed over the preceding 40 years. As a practical matter this park land had, previous to the 1972 election, been transferred to a nonpark use. This long standing and well established use does not constitute an environmental 'change' which is the criteria for requiring an EIR. (Cal. Admin. Code, tit. 14, § 15081(c).) [¶] The transfer in and of itself would not require an EIR, and the proposed future allocation of funds for the improvement of existing facilities does not alter this conclusion. Where a project is approved prior to November 23, 1970, an EIR or Negative Declaration is required only if the project may have a significant effect on the environment *and* a public agency proposes to modify the project in such a way that the project might have a new significant effect on the environment. (Cal. Admin. Code, tit. 14, § 15070(a)(2).) At the time of the 1972 election there was a police training facility in Elysian Park. CEQA Guidelines exempt alterations to existing facilities and exempt replacement or reconstruction of existing structures and facilities with certain restrictions (Cal. Admin. Code, tit. 14, §§ 15101, 15102). There is no indication that funds will be used for purposes outside the scope of these exemptions. Where a project is categorically exempt, the agency *may,* but is not required to, file a notice of exemption (Cal. Admin. Code, tit. 14, § 15074)."

A pistol range had been maintained on the premises in question since 1925. (See *Simons v. City of Los Angeles, supra,* 63 Cal.App.3d 455, 463-464.) The addition of the firearms training simulator building adjacent to the pistol range is clearly within exempt class 11 (Cal.

Admin. Code, tit. 14, § 15111) as a minor structure accessory to existing institutional facilities.

The determination that the questioned structure was categorically exempt from the provisions of CEQA was supported by substantial evidence. (Pub. Resources Code, §§ 21168, 21168.5; *Plan for Arcadia, Inc.* v. *City Council of Arcadia,* 42 Cal.App.3d 712, 725 [117 Cal.Rptr. 96].)

The judgment of the trial court denying appellant's petition for a writ of mandate is affirmed.

Allport, J., and Potter, J., concurred.