TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 98-1102 |
| of | : | March 10, 1999 |
| BILL LOCKYER
Attorney General | : | |
| ANTHONY M. SUMMERS
Deputy Attorney General | : | |

THE CALIFORNIA LAW ENFORCEMENT TELECOMMUNICATIONS ADVISORY COMMITTEE has requested an opinion on the following question:

May a city, which by contract provides parking citation management services to another city, have access through its police department to the California Law Enforcement Telecommunications System to assist it in performing its contractual responsibilities?

CONCLUSION

A city, which by contract provides parking citation management services to another city, may have access through its police department to the California Law Enforcement Telecommunications System to assist it in performing its contractual responsibilities.

ANALYSIS

The Legislature has authorized the Department of Justice to maintain a statewide telecommunications system, known as "CLETS," for the use of law enforcement agencies. (Gov. Code, §§ 15150-15167.)[1] The purposes of CLETS are set forth in section 15151 as follows:

"The maintenance of law and order is, and always has been, a primary function of government and is so recognized in both Federal and State Constitutions. The state has an unmistakable responsibility to give full support to all public agencies of law enforcement. This responsibility includes the provision of an efficient law enforcement communications network available to all such agencies. It is the intent of the Legislature that such a network be established and maintained in a condition adequate to the needs of law enforcement. It is the purpose of this chapter to establish a law enforcement telecommunications system for the State of California."

The question presented for resolution is whether CLETS may be used by a city to provide parking citation management services to another city. We conclude that it may be so used.

We first note that the Legislature requires CLETS to "be used exclusively for the official business of the state, and the official business of any city, county, city and county, or other public agency." (§ 15153.) Are parking citation management services performed for another municipality "the official business of any city . . ."?

The parking management services being offered by the city in question include (1) the identification of registered owners of cited vehicles, (2) the mailing of notices to the persons responsible for paying the citation, (3) the placement of registration holds with the Department of Motor Vehicles when a citation is not paid in a timely manner, and (4) removal of the registration hold when the citation is cleared. (See Veh. Code, §§ 40200.8, 40203, 40206, 40206.5.) In some instances the services provided may be more extensive, including (5) receipt of payment for citations, (6) responding to "customer inquiries," (7) conducting administrative investigations, (8) scheduling hearings, (9) carrying on all correspondence relating to citations, and (10) forwarding funds received and providing an accounting to the entity issuing the citation. These activities are described in *Lockheed Information Management Services Co.* v. *City of Inglewood* (1998) 17 Cal.4th 170, 174-176, where the court resolved the issue whether the provision of parking management services pursuant to contract may constitute the "official business" of a city:

---

[1] Further references to the Government Code will be by section number only.

". . . [G]overnment Code section 54981 authorizes Inglewood to contract with other local agencies, both within and without Los Angeles County, for assistance in the management and disposition of their parking citations. The administration of parking tickets is a core 'municipal . . . function[]' which Inglewood is authorized to perform for itself, and which its customer agencies, in the proper administration of their own municipal affairs, are likewise authorized, and would otherwise be required, to perform for themselves. Under Government Code section 54981, such functions may therefore be the subject of a 'contract service' agreement between Inglewood and any other such 'local agency,' regardless of their geographic relationship, as the contracting parties deem in their best interests . . . ." (*Id.*, at pp. 184-185.)

Because the management and disposition of parking tickets is a core function of a municipality that may be subject to a "contract service" agreement with another city, the city performing the management services would be using CLETS for "the official business of any city . . . ." (§ 15153.)

Next we consider whether providing parking citation management services constitutes "law enforcement" activities, since the purpose of CLETS is to provide "an efficient law enforcement communications network" to "public agencies of law enforcement." (§ 15151; see also §§ 15152, 15163, 15164.) Clearly a city police department is a law enforcement agency for purposes of this statutory scheme, and a city parking ordinance "has the same force within its corporate limits as a statute passed by the Legislature has throughout the state. [Citations.]" (*Brown* v. *City of Berkeley* (1976) 57 Cal.App.3d 223, 231; accord, *Simons* v. *City of Los Angeles* (1977) 72 Cal.App.3d 924, 934.) However, is the enforcement of laws through civil penalties rather than criminal penalties a "law enforcement" function? We reject the suggestion that the term "law enforcement" necessarily requires enforcement through criminal sanctions rather than civil sanctions.

As recently noted in *Tyler* v. *County of Alameda* (1995) 34 Cal.App.3d 777, 780, parking offenses are no longer considered criminal in nature but rather are civil offenses subject to civil penalties:

"In 1992 the Legislature substantially changed the way parking violations are handled. No longer are parking violations treated as infractions within the criminal justice system; instead they are treated as civil offenses subject to civil penalties and administrative enforcement."

Parking citations, with limited exceptions, are enforced by imposition of a civil penalty. (Veh. Code, § 40200, subd. (a).) Unpaid penalties are subject to collection by the

Department of Motor Vehicles at the time a vehicle is registered, or as a civil judgment. (Veh. Code, § 40220.)  Thus, parking violations are not subject to criminal penalties and do not fall within the definitions of a "crime" or "public offense."  (Pen. Code, §§ 15-16.)

The term "law enforcement" is often used to refer to the enforcement of criminal laws, but it is not limited to that meaning.  Rather, law enforcement agencies often have responsibilities for enforcing laws containing civil penalties.  For example, the Attorney General is the chief law officer of the state (Cal. Const., art. V, § 8) and enforces many laws resulting in the imposition of civil penalties (see, e.g., Bus. & Prof. Code, §§ 17200, 17500).  In *People* v. *New Penn Mines, Inc.* (1963) 212 Cal.App.2d 667, 671, the court observed:

"As chief law officer of the state, the Attorney General has broad common law powers.  In the absence of legislative restriction he has the power to file any civil action which he deems necessary for the enforcement of the laws of the state and the protection of public rights and interests. [Citations.]"

Similarly, a district attorney prosecutes crimes (Gov. Code, § 26500), but may also enforce laws resulting in civil penalties as part of his or her other "law enforcement" duties.  In *People* v. *Pacific Land Research Co.* (1977) 20 Cal.3d 10, 17, The Supreme Court explained:

"An action filed by the People seeking injunctive relief and civil penalties is fundamentally a *law enforcement action* designed to protect the public and not to benefit private parties.  The purpose of injunctive relief is to prevent continued violations of law and to prevent violators from dissipating funds illegally obtained.  Civil penalties, which are paid to the government [citations],  are designed to penalize a defendant for past illegal conduct." (Italics added.)

In *Rauber* v. *Herman* (1991) 229 Cal.App.3d 942, 948, the court examined whether a district attorney or the county counsel was the appropriate legal officer to represent the county in proceedings seeking to recover overpayments made to welfare recipients:

". . . [C]ertain functions not amounting to the prosecution of a criminal offense may . . . fall within the ambit of the district attorney's prosecutorial role, and therefore may be performed by the district attorney even where there is a county counsel.  As clarified by an opinion of the Attorney General: 'Noncriminal actions are not necessarily "civil actions" under [Government Code section 26529].  The courts have held in several instances that cases which might normally be considered civil are actually the responsibility of the

district attorney. Primary responsibility for noncriminal actions or proceedings turns on whether they would be "in aid of and auxiliary to the criminal law" [citation] because the district attorney, as public prosecutor, must closely supervise transactions related to enforcement of the criminal law. . . .' " (38 Ops.Cal.Atty.Gen. 121, 122 (1961).) In *Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671, 674, the court held the district attorney and not the county counsel had the responsibility to bring civil red-light abatement actions which were compatible with his duties as public prosecutor.

"Thus, even in counties where there is a county counsel, '[i]t is . . . clear that the district attorney's duties as public prosecutor embrace more functions than the prosecution of criminal actions.' (64 Ops.Cal.Atty.Gen. 418, 422 (1981).) If such functions, though civil in nature, are closely related to and in furtherance of criminal law enforcement, then the district attorney may properly perform them. [Citations.]"

We believe that the term "law enforcement" comprises more than simply the enforcement of laws carrying criminal penalties. It is, under certain circumstances, an appropriate function of a law enforcement agency to enforce laws for which civil penalties are imposed. A public agency with law enforcement responsibilities does not cease to be a law enforcement agency when it enforces such laws.

In summary, the Supreme Court has determined that the management and disposition of parking citations is a legitimate municipal function whether done by the agency issuing the citations, or pursuant to contract by a city acting as a processing agency. That function is to enforce the parking laws of the city; administering a parking citation system is a law enforcement activity whether the citation carries a criminal or civil penalty.

We thus conclude that a city, which by contract provides citation management services to another city, may have access through its police department to CLETS to assist it in performing its contractual responsibilities.

\* \* \* \* \*